KREMER and others, Respondents, vs. CRASE, imp., Appellant.

*September 15—October 11, 1932.*

For the appellant there was a brief by *James & Larkin* of Dodgeville, and oral argument by *Charlton H. James.*

For the respondents there was a brief by *Kopp & Brunck-horst* of Platteville, and oral argument by *Arthur W. Kopp.*

Owen, J.    This action is brought to foreclose a mortgage executed by the appellant and others to secure the payment of $12,000.   The mortgaged property consisted of 205 acres of farm land.   It is situated in the zinc region in Iowa county.   The appellant, Minnie Crase, owned a portion of the mortgaged property in fee.   Subsequent to the execution of the mortgage she entered into a lease-agreement with the Badger Zinc Company wherein she leased to the company the mining rights to that part of the mortgaged premises owned by her.   Mining operations proceeded until royalties to the amount of $3,000 had been paid to appellant under the terms of said mining lease before the mortgagees learned of such mining operations.   When they learned of such operations they notified the mining company to pay no further royalties to Minnie Crase.   Thereupon there was a meeting of the parties, including the zinc company, and it was agreed

that all further royalties should be deposited in escrow with the Central Wisconsin Trust Company of Madison, subject to the ultimate determination as to who was entitled thereto.

The court found that there was due on the mortgage $12,000, plus interest for about nine months and plus about one hundred dollars paid by the mortgagees for the renewal of insurance policies. The court further found the removal of the ore, the non-payment of interest and insurance premiums, constituted waste, and that the fair market value of the mortgaged premises did not exceed the sum of $50 an acre. The judgment provided for the appointment of a receiver to take immediate possession to preserve the premises, with the right to rent the surface beginning in March, 1922; that the amount of royalties on deposit with the Central Wisconsin Trust Company be paid to the clerk of the circuit court, and that, if a deficiency judgment should be rendered in the foreclosure action, the amount of such royalties, or so much thereof as may be necessary, should be applied toward the payment of such deficiency judgment. It was further provided that all future royalties should likewise be deposited with the clerk of said court to be applied upon such deficiency judgment, if required, otherwise to be paid over to the appellant. The mortgagors were also permanently enjoined from collecting or attempting to collect royalties from any of the lands described in the complaint, and the Badger Zinc Company was permanently enjoined from paying royalties to any of said mortgagors.

That part of the judgment appointing a receiver and providing that the impounded royalties shall be applied toward the payment of any deficiency judgment, so far as required, is most strenuously assailed by the appellant. The mortgage lien in this case certainly extended to the mineral deposits under the surface of and in the land. To use a trite expression, it covered everything from the center of the earth to the skies. It seems to be universally recognized that it is

waste to open up new mines or quarries on demised premises and take rock, oil, minerals, etc., therefrom. [40 Cyc. 506; 27 Ruling Case Law, pp. 1023, 1025; *Holmberg v. Johnson,* 45 Kan. 197, 25 Pac. 575; *Childs v. Kansas City, St. J. & C. B. R. Co.* 117 Mo. 414, 23 S. W. 373; *Potomac Dredging Co. v. Smoot,* 108 Md. 54, 69 Atl. 507; *McFadden's Estate,* 224 Pa. St. 443, 73 Atl. 927; *Waldorf v. Elkhart & W. R. Co.* 13 Ind. App. 134, 41 N. E. 396; *Boeing v. Owsley,* 122 Minn. 190, 142 N. W. 129] It is equally well settled that as between the life tenant and the remainderman, or as between the landlord and tenant, the tenant has the right to use mines already opened up at the time the relation is created, and that a mortgagor has the right to continue the operation of a mine being operated when the mortgage is given. This is on the theory that when the estate is created, or the mortgage executed, it will be expected that the tenant or mortgagor will continue to operate the property as theretofore. Courts have not hesitated, however, to restrain the mortgagor from opening up new mines. This is on the ground that the removal of the ore from the ground constitutes an impairment of the security, a sale of a part of the mortgaged property, and in no sense constitutes rents and profits. *Real Estate Trust Co. v. Hatton,* 194 Pa. St. 449, 45 Atl. 379; *Shaeffer v. Eichert,* 10 Pa. Co. Ct. Rep. 360; *Duff v. Hopkins,* 10 Sad. (Pa.) 483, 14 Atl. 364; *Martin v. Ambler,* 6 Sad. (Pa.) 312, 9 Atl. 490.

This mine was not open at the time the mortgage was executed. In fact, there had been no mine opened upon the property covered by the mortgage. This ore was reached by a drift from a mine on adjoining property. We cannot doubt that the removal of this ore depreciated the inherent value of the security and constituted waste.

But the receiver in this case was not appointed because the ore was removed, nor was he appointed for the purpose of collecting royalties. The court laid its hand upon the

royalties which were impounded by an agreement of the parties. It treated the royalties as a part of the mortgaged property, and impressed the lien of the mortgage upon the royalties which the parties had caused to be deposited in escrow in the trust company. That it had the power to thus deal with the proceeds received for what, in effect, amounted to a sale of a portion of the mortgaged premises, is clear. As stated in 1 Jones on Mortgages (6th ed.) § 708:

"When the mortgaged property has been turned into money, or a claim for money in any way, as, for instance, by the taking of the property for public uses, or for the use of a corporation under authority of law, the rights of the mortgagee remain unaltered, and he is entitled to have the money in place of the land applied to the payment of his claim."

In *Duff v. Hopkins,* 10 Sad. (Pa.) 483, 14 Atl. 364, at p. 367 it is said:

"Royalty, in this contract, is the price of the coal; the purchase money of the land. It is substituted for the land, and it is to be distributed precisely as if the land were sold by a judicial decree, and the price brought into court for distribution. The rights of the mortgagee are not altered by the turning of the mortgaged estate into money, for the court directs the money to be applied according to the rights of redemption."

The court was entirely justified in ordering this impounded money to be paid into court, and to direct that so much thereof as may be necessary should be applied upon the payment of any deficiency judgment rendered herein. These moneys were impressed with the lien of the mortgage, and take the place of the land as security for the mortgage debt. The receiver in this case was appointed to take charge of the surface of the land and to collect the rents and profits thereof which might accrue during the redemption period.

It is argued that the receiver should not have been appointed because of the absence of proof that the mortgaged premises constituted an insufficient security for the mort-

gage debt, or that the mortgagors are insolvent. This contention is expressly negatived in *Fairbank v. Cudworth,* 33 Wis. 358. On page 363 of the opinion in that case it is said:

"The test question seems to be, Is the security of the mortgage about to be impaired? And upon principle, no good reason is perceived why the pecuniary condition of the mortgagor should be a consideration of any importance. The land is the primary fund for the payment of the debt secured by the mortgage. The mortgagee may resort, in the first instance, to the land for payment, and it would be inequitable to permit the mortgagor wantonly to destroy or impair the security, whether he be solvent or insolvent."

It is true that in most of the cases involving the appointment of a receiver coming to this court, some showing was made upon the motion concerning the inadequacy of the security or the insolvency of the debtor. This may be due to the decision of this court in *Morris v. Branchaud,* 52 Wis. 187, 8 N. W. 883, where authorities were cited to the effect that a receiver would not be appointed unless the security was inadequate or the debtor insolvent. No showing of waste was made in that case and the appointment of a receiver was denied. Most of the cases cited were from inferior courts, and at least one did not involve a mortgage foreclosure at all. The inference left by the opinion that a showing of insolvency or inadequacy of security is a necessary prerequisite to the appointment of a receiver in case of waste, is unsound, and directly antagonistic to the rule announced in *Fairbank v. Cudworth,* 33 Wis. 358, to which no reference was made. The fact that waste has occurred, or is likely to occur, is the dominant consideration which arouses the power of a court of equity, although the questions of whether the security is sufficient or whether the mortgagor is solvent may be proper incidental considerations in certain cases to influence the court as to whether the power should be exercised. In *Grether v. Nick,* 193 Wis.

503, 213 N. W. 304, 215 N. W. 571, we emphatically negatived the proposition that a receiver could be appointed solely because the security was insufficient or the mortgagor insolvent. In all such cases the dominant consideration is whether a receiver is necessary in order to prevent waste and a diminution of the security.

In this case it appeared that about nine months' interest was overdue and that the mortgagees had been obliged to expend in the neighborhood of $100 to keep the insurance in force. This, taken in connection with the removal of the ore, constituted waste authorizing the appointment of the receiver to collect the rents and profits arising from the use of the land for agricultural purposes. *Grether v. Nick,* 193 Wis. 503 (213 N. W. 304, 215 N. W. 571), and cases cited on p. 509. We find no error in the record and the judgment must be affirmed.

*By the Court.*—So ordered.