KREMER and others, Appellants, vs. RULE and others, Respondents.

*October 11—November 6, 1934.*

332

For the appellants there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *L. A. Brunckhorst*.

*J. Charles Pile* and *George J. Larkin,* both of Dodgeville, for the respondents.

NELSON, J. This is the second appeal to arise in this action. The first appeal was from that part of the judgment which appointed a receiver. That judgment was affirmed. *Kremer v. Crase,* 209 Wis. 183, 244 N. W. 596. After the expiration of the one-year period of redemption, pursuant to due notice of sale, the premises were struck off to the plaintiffs for $10,000. Upon the application of the plaintiffs to confirm that sale, a hearing purporting to comply with the rules approved in *Suring State Bank v. Giese,* 210 Wis. 489, 246 N. W. 556, was held for the purpose of determining whether the plaintiffs' bid was inadequate, and for the further purpose of permitting the court, in case it deemed the bid substantially inadequate, (1) to fix a "minimum or upset price" of the premises on a resale thereof, and (2) to determine the fair value of the premises which the plaintiffs might at their option credit on their foreclosure judgment, as a condition precedent to immediate confirmation of the sale. After hearing had the court was of the opinion that the plaintiffs' bid of $10,000 was substantially inadequate. It thereupon fixed an upset price of $13,325 on the lands in question. The court also concluded that the fair value of the premises was exactly the same as the "upset price" fixed, and therefore gave to the plaintiffs the option to credit on their foreclosure judgment the sum of $13,325 as a condition precedent to confirmation. The plaintiffs refused to so credit. The court thereupon entered a formal order in which it refused to confirm the sale, fixed the upset price of the land at $13,325 ($65 per acre), and ordered a resale of the premises. Upon the second sale which was duly held, the premises were again

struck off to the plaintiffs for $10,000. Upon the application of the plaintiffs to confirm that sale the court again refused to confirm it, ordered a resale of the premises and entered a second order in all respects similar to the first one. Thereafter a third sale was duly held and the premises were again struck off to the plaintiffs for $10,000. Upon application to confirm that sale the court refused to confirm it unless the plaintiffs would credit on the foreclosure judgment the amount of the upset price or fair value theretofore fixed. Plaintiffs declined to credit that sum on their judgment, and thereupon specifically offered to prove by a number of witnesses named that the value of the lands had declined since the court had fixed the upset price or fair value thereof. The court declined to receive the proof offered, and entered a third order in which confirmation was denied and another sale of the premises ordered. Some time thereafter, upon the petition of the defendant Minnie Crase that she be paid out of the funds impounded with the clerk of the court the sum of $2,069.20 (the amount which would have remained in the hands of the clerk had the plaintiffs elected to accept the option given them to credit the sum of $13,325 on their judgment and had they satisfied their deficiency out of the funds in the clerk's hands), the court ordered that said sum be paid to her.

It appears that the mortgage herein was given in the year 1926 to secure a loan of $12,000; that the loan was evidenced by several notes so that the mortgagee might sell them to such of its customers as desired relatively small but secure investments. All of the notes were separately sold to the plaintiffs and indorsed without recourse. In 1931, the mortgagor defendants being in default, this action was commenced. On December 29, 1931, judgment of foreclosure was duly entered. The judgment, which is in the usual form, adjudged that there was due to the plaintiffs for principal and insurance, with interest thereon, the sum of $12,769, for solici-

tor's fees $238.85, and for the costs and disbursements of the action $197.64; that the mortgaged premises, or so much thereof as might be necessary to raise the amount due the plaintiffs for principal, etc., be sold at public auction by the sheriff of Iowa county, after one year from the date thereof; that if upon the sale of said premises there should be a deficiency, that the plaintiffs should have judgment for the amount of the deficiency against certain of the named defendants who were personally liable therefor, and that if there should be a deficiency judgment rendered then certain moneys deposited with the clerk of the court, or so much thereof as should be necessary, should be applied toward the payment of such deficiency judgment, and any part thereof remaining should be paid to the defendant Minnie Crase.

It further appears that some time after the original mortgage was given, defendant Minnie Crase, unbeknown to the plaintiffs, leased some of the lands covered by the mortgage to the Badger Zinc Company, which company thereafter entered into the premises by means of a drift from adjoining property, conducted extensive mining operations therein, removed large quantities of ore therefrom, and thereby impaired the value of the mortgage security. Before the plaintiffs learned of the mining operations, royalties amounting to about $3,000 had already been paid to the defendant Minnie Crase, for which sum she did not account to the plaintiffs, but converted the same to her own use. Upon learning of the mining operations the plaintiffs notified the mining company not to pay any further royalties to her. Thereafter it was agreed between the parties that all unpaid royalties should be deposited in escrow with the Central Wisconsin Trust Company of Madison, subject to the future determination of the question as to who was entitled thereto. In *Kremer v. Crase, supra,* it was held that the royalties first deposited with the said Trust Company and later transferred to the custody of the clerk of the court by the judgment of fore-

closure herein, were impressed with the lien of the mortgage and took the place of the ore removed as security for the mortgage debt. At the time of the three sales hereinbefore mentioned the fund in the hands of the clerk amounted to $3,642.97, which obviously, and under the decision in *Kremer v. Crase, supra,* was subject to the lien of the plaintiffs' judgment.

It further appears that the buildings upon the premises were about forty years old, and that some of them were so run down and dilapidated as to be useless for ordinary farm purposes. Several witnesses testified, and their testimony was not disputed, that a purchaser of the lands necessarily would have to replace some of the buildings because they were beyond repair.

It further appears that several of the plaintiffs were aged and in necessitous circumstances. Ida Tesch, a widow sixty-three years of age, living in town, was in financial distress and particularly in need of money with which to pay her deceased husband's funeral expenses. She had no income to live on. Peter Treiber, another plaintiff, was about seventy years old, a cripple and suffering from a stroke. He was greatly in need of funds. Joseph Kremer, a farmer, was about seventy-five years of age and had no income. Charles Weingartner was about fifty-six years of age and in fairly comfortable circumstances. Dennis Sullivan, the remaining plaintiff, was eighty-four years of age and in need of upwards of $1,000 to meet a pressing financial obligation.

Upon the hearing testimony was received over the objection of the plaintiffs, which tended to show, not the fair value of the lands at the time of the sale or at the time of the hearing, but what the lands would probably be worth if the conditions and prices of farm produce which prevailed during the years 1910 to 1914 again existed. This line of testimony was offered on the theory that farm lands may be so presently valued for the purpose of fixing a minimum or upset price on

foreclosure sale or for the purpose of permitting a plaintiff mortgagee to credit on his foreclosure judgment the fair value of the land as a condition precedent to confirmation of a sale already had.

The court apparently attempted to follow the procedure outlined in *Suring State Bank v. Giese, supra.* In that case the original mortgage loan was $2,000 and the amount of the bid was only $600. The plaintiff bank sought to have the sale confirmed and to have a deficiency judgment entered in its favor amounting to $1,379.16. The trial court confirmed the sale upon the express condition that the plaintiff waive its right to a deficiency judgment. No option was given to the plaintiff to accept or reject the condition imposed. Upon appeal to this court that action of the trial court was held to be erroneous. It was further held that a trial court may in the exercise of its equitable powers refuse to confirm a sale on foreclosure where the bid accepted by the sheriff is substantially inadequate and other facts appear rendering the sale unjust or inequitable. It was held that the absence of bidders at the sale other than the mortgagee because of the existing emergency might be considered in connection with the fact that the bid was substantially inadequate, in determining whether confirmation of a sale should be refused and a resale ordered. It was further held that in such a situation, if the court refuse to confirm, it may give to the mortgagee purchaser the option to credit on his foreclosure judgment as a condition of immediate confirmation "the fair value of the property" to be determined on hearing. It was further held that, if the plaintiff mortgagee refuse to credit on his foreclosure judgment the fair value of the property as found by the court, the court may order a resale and fix a "minimum or upset price" which must be bid on a resale of the premises.

The rules of the *Suring Case* were stated in general terms with no attempt to define either the meaning of "minimum or upset price" or "fair value of the premises." It is quite

apparent that the trial court did not fully appreciate just what it should consider in fixing a minimum or upset price for purposes of resale, or in determining the fair value of the premises for purposes of optional credit. In determining these questions the court was evidently of the opinion, as revealed by his rulings on the admission of the evidence, that it could consider the market value of the premises which existed at some remote time under conditions deemed by the court to be normal. There is nothing in the *Suring Case* to justify that view. Although the expression "market value" appears in the following language of the opinion:

"We see no reason why the same power [to fix a minimum or upset price] should not be exercised in cases where economic conditions are such as to preclude the element of competitive bidding, and to make ineffective the ordinary and usual manner of fixing the *market value* of the property,"

it was used in the sense of real value at the time of sale rather than in its ordinary established sense or meaning. "Market value" has been variously defined by this court. *Milwaukee Trust Co. v. Milwaukee,* 151 Wis. 224, 138 N. W. 707; *Maxon v. Gates,* 136 Wis. 270, 116 N. W. 758. But the generally accepted definition of market value is that price which property will bring when it is offered for sale by one who desires, but is not obliged, to sell, and it is bought by one who is willing, but not obliged, to buy. See numerous cases cited in 3 Words and Phrases (2d series), p. 303. "Market value," as ordinarily defined, can have little, if any, application to a mortgage foreclosure sale where obviously the defendant mortgagor is forced to sell and where the plaintiff mortgagee, in the absence of other bidders, is obliged to bid if the foreclosure sale is to be consummated. So when a court is determining "real value of the premises" for the purpose of giving to the mortgagee the option to credit the amount thereof on the foreclosure judgment as a condition

precedent to confirmation of a mortgage foreclosure sale which has already taken place upon a bid deemed by the court to be substantially inadequate, it should not consider "market value" as that expression is ordinarily used and understood, much less the value that the premises may have had at some remote time or may have in the future if the prices obtainable for farm products prevalent during such past remote period shall again prevail.

When the conscience of the court is shocked at the inadequacy of a bid, and the court feels impelled to determine the real value of the premises for the purpose of giving to the plaintiff mortgagee the option to credit the amount thereof on the foreclosure judgment, it should direct its attention to the matter of determining the real value of the premises as of the time of the foreclosure sale. The upset price also should bear some reasonable relation to the value of the security at the time of sale. *Michigan Trust Co. v. Dutmers,* 265 Mich. 651, 252 N. W. 478.

"Real value of the premises," as used in the *Suring Case,* should approximate that price which a person willing and able to buy the property would reasonably pay for it, not for purposes of speculation, but for that use to which it has been or reasonably may be put.

While "real value" as herein defined may, in the opinion of a court, be substantially the same as "minimum or upset price," especially when applied to an ordinary farm or comparatively small property, "upset price" generally means that price which must be bid if confirmation by a court is to be expected. In other words, it is that price which the court says in advance of a sale must be bid if the sale is to be confirmed. The court in effect says, when it fixes an upset price, that any bid which does not equal or exceed that amount will be deemed substantially inadequate. The "upset price" is the dividing line between what the court considers inadequate

and adequate. Compare *Guaranty Trust Co. v. Chicago, M. & St. P. R. Co.* 15 Fed. (2d) 434. In that case it was said:

"All that can be said of the 'upset price' . . . is that 'it reduces the chances that the confirmation of the sale will have to be withheld because of the inadequacy of the bid.' "

"Upset prices" in cases involving the foreclosure of large and extensive properties generally have been fixed at a figure considerably below the amounts decreed due in the judgments of foreclosure. See citations of numerous cases involving upset prices cited in 85 A. L. R. 1487.

It is our opinion, after having given careful consideration to all the circumstances appearing, that the trial court was apparently ruled by considerations having no proper application to the issues, and abused its discretion in determining that the bid of the plaintiffs, coupled with their express waiver of a deficiency judgment, was substantially inadequate. At the time of the first sale there was due on the mortgage the sum of $13,205.49, plus interest at five per cent from December 29, 1931, taxes and costs of sale, to which should be added a small deficit in the receiver's account. The foreclosure judgment was not only a lien on the land, but was a lien also on the royalty proceeds amounting to $3,642.97, which took the place of the ore removed from the land. The plaintiffs bid $10,000 for the land subject to taxes amounting to $479.59, and waived their rights to any deficiency that would remain after the moneys in the hands of the clerk had been applied on their judgment. It thus appears that the plaintiffs in effect bid for the properties covered by their foreclosure judgment, that is to say, the land and the moneys which took the place of that part of the security which was sold and removed, the full amount of their judgment, in spite of the fact that the defendant Minnie Crase had theretofore

collected and appropriated royalties amounting to about $3,000.

The underlying reason for the trial court's attempt to compel the plaintiffs to bid $13,325 for the land alone is obvious. It did this so that substantially $2,069 would be left in the clerk's hands after paying the deficiency on the judgment, to be turned over to the defendant Minnie Crase. Whatever might be said in justification of the refusal of the court to confirm the first sale under the circumstances then appearing, ceases to have force or effect so far as the second or third sales are concerned. There was no testimony adduced at the hearing tending to show that a better price would be bid at the second sale or at the third sale. The second sale demonstrated the futility of another sale and the futility of still another sale was demonstrated when the lands were offered at the third sale. Unusual publicity resulted from the hearing had and the resulting controversy as well as from the efforts of the plaintiffs to line up prospective purchasers.

The obvious purpose of the procedure outlined in the *Suring Case* is to prevent the inequitable result of permitting a mortgagee at a foreclosure sale to make a substantially inadequate bid for property covered by his mortgage, obtain title to the property, and in addition obtain a large deficiency judgment against the mortgagor. Obviously in this case no such inequitable result was contemplated.

Since, in our opinion, the court erred in refusing to confirm the several sales, it becomes unnecessary to discuss the order of the court to pay to Minnie Crase the sum of $2,069.20, which, if permitted to stand, would have the force and effect of arbitrarily subtracting from the properties covered by the foreclosure judgment a substantial part thereof. That order in our opinion was clearly erroneous.

While courts should at all times be solicitous of the rights of mortgagors to the end that their rights may be fully pro-

tected upon foreclosure sales, they should also consider the rights of mortgagees to the end that they too may be treated justly. As was said in *Michigan Trust Co. v. Cody,* 264 Mich. 258, 249 N. W. 844:

"While courts of equity may well be solicitous of the rights and interests of mortgagors, administration of the law by such courts should not be in total disregard of the rights of mortgagees."

. The language quoted is particularly applicable to the plaintiff mortgagees, most of whom are aged and in necessitous circumstances.

*By the Court.*—The orders of the court refusing to confirm the several foreclosure sales, and the order of the court requiring the clerk of the circuit court to pay to Minnie Crase the sum of $2,069.20, are reversed and set aside. The circuit court for Iowa county is directed and commanded to confirm the sale of the premises mentioned in the judgment of foreclosure herein upon condition that the plaintiffs' judgment for deficiency, pursuant to their express voluntary waiver, be fully satisfied upon payment by the clerk of said court to the plaintiffs or their attorneys of the royalty moneys impounded in his hands.