NORTHWESTERN LOAN & TRUST COMPANY, Trustee, Appellant, vs. BIDINGER and wife, Respondents.

*November 8—December 7, 1937.*

*Geo. W. Taylor* of Kenosha, for the appellant.
*L. E. Vaudreuil* of Kenosha, for the respondents.

NELSON, J.   In refusing to confirm the second sale, the court apparently intended to act in pursuance of the equitable rules stated in *Suring State Bank v. Giese,* 210 Wis. 489, 246 N. W. 556, and in compliance with sec. 278.105 (2), Stats. 1935, which provides:

"In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs,"

since it appears that a hearing was held for the purpose of determining the "fair value" of the premises.   Two real-estate men, residents of Kenosha, testified that the fair value of the premises was $49,751.94, but it clearly appears from their testimony that their valuations were based upon cost of reconstruction less depreciation and upon an assumed income which the building did not but might some time in the future produce, if the store could be rented for nearly three times as much as it was rented for at the time of the sale, if the premises, especially the entrance to the second story and the second story, should be remodeled at an expense of between four and five thousand dollars, and if all

of the offices, when so remodeled and afforded suitable janitor service, should each be rented for about $25 per month. Both witnesses admitted on cross-examination that in fixing their valuations they had in mind a purchaser who was "ready, willing and able to buy, but who did not need to buy, and a seller who was ready, able and willing to sell, but who did not of necessity have to sell." In other words, both admitted that they were talking about market value. In *Suring State Bank v. Giese, supra,* after adverting to that power of a court of equity which may be exercised to prevent a mortgagor's property being sold for a grossly inadequate price which shocks the conscience of the court and its notions of justice, we held that a court might refuse to confirm a sale in a given case when there was coupled with an inadequate price an emergency situation which operated to prevent competitive bidding. It was there stated that upon application for confirmation of a sale, if no upset price has theretofore been fixed, the court may conduct a hearing, establish the fair value of the property, and require the plaintiff mortgagee to credit the amount of the fair value of the premises on the foreclosure judgment as a condition of immediate confirmation. In *Kremer v. Rule,* 216 Wis. 331, 337, 257 N. W. 166, it was said, in explanation of the holding in the *Suring State Bank Case:*

"The rules of the *Suring State Bank Case* were stated in general terms with no attempt to define either the meaning of 'minimum or upset price,' or 'fair value of the premises.' "

In *Kremer v. Rule, supra,* in determining "fair value," the trial court considered and relied upon the market value that the premises might have under what it considered normal conditions. We held that to be improper and further said (p. 339) :

"When the conscience of the court is shocked at the inadequacy of a bid, and the court feels impelled to determine

the real value of the premises for the purpose of giving to the plaintiff mortgagee the option to credit the amount thereof on the foreclosure judgment, it should direct its attention to the matter of determining the real value of the premises as of the time of the foreclosure sale."

Again in *Weimer v. Uthus,* 217 Wis. 56, 57, 258 N. W. 358, in further explanation of the ruling in the *Suring State Bank Case,* it was said:

"The court did not say in the *Suring State Bank Case* that in a foreclosure action a court of equity had plenary power to fix a price and compel the mortgagee to accept the property at that price or forego his right to a judgment for deficiency except in such amount as would remain after application of the price fixed by the court to the indebtedness secured by the mortgage." and

"The power of a court of equity is limited to securing justice in a particular case and to preventing an inequitable, unconscionable, and shocking result." and again

"The power of a court of equity to limit a right given to a party by the statute should be exercised with care and circumspection, and solely for the purpose of preventing a result which shocks the conscience of the chancellor as is said in many cases."

From these holdings, it is apparent that "fair value," as used in our cases and which we have held that a court, in the exercise of its equitable powers, may require a mortgagee to credit upon the mortgage indebtedness as a condition of immediate confirmation, is that amount which, under all of the circumstances of a given case, will not shock the conscience of the court. A bid which, under all of the circumstances, is grossly insufficient or unconscionably inadequate and which, if credited upon the mortgage indebtedness, would operate as a great injustice to the mortgagor, does not, of course comply with the concept embodied in the term "fair value." "Fair value" obviously does not mean "market value," as that term is generally understood, or that value which the property may probably have in the future under

more favorable economic conditions, or that value which it may have if the property be remodeled and put to other or more extensive uses which possibly may prove more profitable. It is, of course, difficult to state a rule which may readily be applied to every possible situation. Trial courts, however, should have no great difficulty in applying the rules stated, if they will keep in mind their obligation to do justice between both mortgagors and mortgagees.

In the present action it appears without dispute that the bondholders loaned $35,000 to the defendants, $30,000 of which is unpaid; that the defendants have paid no interest since June 1, 1935; that the defendants themselves occupied the store premises rent free until July 10, 1936; and that the defendants failed to pay taxes and special assessments levied against the premises as they agreed to do, which amounted, at the time of the second sale, to about $11,000. The plaintiff, as trustee, and acting for the bondholders, under such circumstances clearly had the right to foreclose the mortgage and to have the premises sold to the end that the bondholders might realize on the security. Two sales had been duly had at which no one except the bondholders' committee seemed interested in bidding. Whether a resale of the premises would result in a higher bid is exceedingly problematical.

If upon a resale no higher bids are made, that fact should be considered by the court when again called upon to confirm a sale. *Kremer v. Rule, supra.* The mortgagee in the end is entitled to have the mortgaged property sold to satisfy his debt. *Guaranty Trust Co. v. Chicago, M. & St. P. R. Co.* (D. C.) 15 Fed. (2d) 434.

Under our decisions it is optional with the mortgagee whether he will credit the fair value on the mortgage debt as a condition of immediate confirmation. The crediting of the amount fixed by the court cannot be compelled. If

the amount fixed by the court is not credited, and the bid at the sale shocks the conscience of the court, a resale of the premises is perhaps the only alternative.

In our opinion the enactment of so much of ch. 449, Laws of 1935, as is now sec. 278.105 (2), gave to the courts no powers which they did not already possess. *Suring State Bank v. Giese, supra.* At most the statute was nothing more than a legislative recognition or approval of the law of the *Suring State Bank Case.* The language of the statute, "no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs" is practically identical with the language of the *Suring State Bank Case* (p. 493), "as a condition to confirmation, require that the fair value of the property be credited upon the foreclosure judgment." We therefore can give to the language of the statute no different meaning than that given to the language of the *Suring State Bank Case.* To give to the language of the legislature a meaning different from that used in the *Suring State Bank Case,* and to hold that it means a value other than such reasonable value as does not shock the conscience of the court, would obviously involve the statute in serious constitutional difficulties, at least as to mortgages theretofore given. *Vanderbilt v. Brunton Piano Co.* (1933) 111 N. J. Law, 596, 169 Atl. 177, 89 A. L. R. 1080; *Federal Land Bank v. Floyd* (1933), 187 Ark. 616, 61 S. W. (2d) 449; *Adams v. Spillyards* (1933), 187 Ark. 641, 61 S. W. (2d) 686, 86 A. L. R. 1493; *Michigan Trust Co. v. Cody* (1933), 264 Mich. 258, 249 N. W. 844; *Bleakley v. Oakwayne Farms Co.* (1933) 265 Mich. 268, 251 N. W. 354; *California Joint Stock Land Bank v. Gore* (1936), 153 Or. 267, 55 Pac. (2d) 1118.

To construe that section as requiring a mortgagee in every foreclosure case to credit the entire amount of the indebted-

ness and thereby compel him to waive his right to a deficiency judgment would doubtless operate to impair a pre-existing mortgage contract. Cases cited, *supra*.

The mere fact that the complaint does not ask for a deficiency judgment does not show, under the facts of this case, that a deficiency judgment will not result. A separate judgment was taken on the bonds, and, unless that judgment is fully paid by crediting thereon the amount realized in the foreclosure sale, a judgment having all the characteristics of a deficiency judgment will exist.

After having given the matter most careful attention, we are of the opinion that the bid of the bondholders, subject to the outstanding taxes, was so inadequate as properly to shock the conscience of the court. The court, however, erred in requiring the plaintiff, as a condition of immediate confirmation, to credit so large an amount upon its judgment.

We do not feel that we should state the amount which the plaintiff should credit on the mortgage indebtedness as a condition of immediate confirmation. That may better be done by the trial court acting in accordance with the principles stated herein as to the meaning of "fair value."

In the judgment it was provided:

"It is further ordered that the value of the mortgaged premises is $42,000 for all purposes of this foreclosure proceeding."

The value of the premises was thereby set in such a manner as to be binding upon the parties to this litigation. The question as to what figure less than the $42,000 will shock the conscience of the trial court should be determined by that court in the first instance.

*By the Court.*—Order reversed, and cause remanded for further proceedings.