BRINCKLEY and others, Appellants, vs. SAGER and wife, Respondents.

*June 5—June 21, 1939.*

The cause was submitted for the appellants on the brief of *Norman B. Langill* of Marinette, and for the respondents on that of *James C. Morgan* of Wausaukee, attorney, and *L. M. Nelson* of Marinette of counsel.

MARTIN, J. On July 21, 1934, plaintiffs obtained a judgment of foreclosure for the sum of $2,796.75, damages and costs. The amount of the unpaid taxes was not included in the judgment. The amount due for taxes does not appear. There is no bill of exceptions. A foreclosure sale was had of the mortgaged premises on September 18, 1935. Plaintiffs bid in the property at this sale for the sum of $1,600.

They then moved for a confirmation of the sale and for a judgment for the deficiency in the sum of $1,429.79. It appears that upon the hearing some testimony was offered as to the market value of the premises at the time of and immediately before the sale, and on October 12, 1935, the court filed a written decision, the material part of which is as follows:

"Testimony was adduced on the hearing of the motion to confirm the sale to establish the following facts:

"1. The market value of the premises at the time of the execution of the mortgage.

"2. The market value of the premises at the time and immediately before the sale.

"3. The actual value of the premises for the purposes said property could be used.

"4. The effect of the economic conditions existing at and prior to the sale upon the market value of the premises.

"There was the usual confusion among the experts called to testify as to the value and there is entered on the record diametrically opposed views and greatly divergent opinions. If the testimony adduced in favor of the plaintiff is to be believed in toto, I would be forced to the conclusion that the property has no value, market or actual, and no potentialities.

"The mortgage in the instant case was executed after the foreclosure of another mortgage on the same premises running in favor of the Seymour State Bank, and in connection with the testimony of those individuals, it is interesting to note that in the first foreclosure sale held on the 5th day of March, 1918, the premises were struck off to the Seymour State Bank as the highest bidder at the then foreclosure sale at the sum of three thousand dollars. There is no showing made that the then mortgagor was uncollectible, but on the contrary an intimation at the hearing in this case was to the effect that the then mortgagor was collectible. It is, therefore, utterly impossible to reconcile the testimony offered by the plaintiffs that the property is now practically worthless and that their bid of sixteen hundred dollars was too high and from which they would like to be relieved and the accepted bid of three thousand dollars at the foreclosure sale in

March, 1918. The further claim that there is no difference in the market value of the premises now and in April, 1918, when the mortgage in the instant case was executed, makes their testimony all the more incomprehensible."

The court then refers to the testimony of two disinterested witnesses offered by defendants as to the market and actual value of the mortgaged premises in question. One of said witnesses fixed a value of $4,017.50, the other, a value of $5,742.50. In the absence of their testimony we have no means of knowing how these values were arrived at. However, the trial court makes this statement:

"It is utterly impossible to be anything but ridiculous in attempting to arrive at what is strictly called present market value of real estate because the market for a long time has been so depressed that one can only arrive at potentialities or actual values of the property, having in mind the purposes for which the property can be used in normal times. There is no presumption that the property sold for its fair market value at the sale but on the contrary the statute provides that no such presumption shall be indulged in."

The court then concludes as follows:

"I have come to the conclusion that the highest actual value that can be placed upon the premises at the present time is forty-five hundred dollars, and that the lowest is three thousand dollars, and that a fair upset price to be fixed is the sum of thirty-five hundred dollars.

"The sum of thirty-five hundred dollars will, therefore, be credited upon the mortgage debt. . . .'."

On the same day the court entered an order for resale in which order the court made the following finding:

"1. That the highest market value of the premises at the present time is forty-five hundred dollars, and that the lowest market value is three thousand dollars.

"2. That the sum of sixteen hundred dollars bid at the sale is unfairly inadequate and inequitable.

"3. That the sum of thirty-five hundred dollars be credited against the mortgage debt."

Continuing, the order provides:

"It is hereby ordered that the sum of thirty-five hundred dollars be credited upon the mortgage debt or that in the alternative a resale of the premises may be had at the instance of the plaintiffs on or before sixty days from the date hereof."

The appeal from the order of October 12, 1935, not having been taken within six months from the date of the entry of said order, that appeal must be dismissed. See sec. 274.01, Stats.

A resale of the mortgaged premises was had on February 1, 1936. The date of the first publication of this sale was on December 19, 1935, more than sixty days from the date of the order for a resale. Upon the resale plaintiffs again bid in the property, but this time at $1,500. So far as the record discloses, no further action was had until December 31, 1938, on which day plaintiffs moved for a confirmation of the second sale and for a deficiency judgment in the sum of $1,587.68. On said date the court entered an order confirming said second sale, also denying any deficiency judgment and further directing:

"That the sum of thirty-five hundred dollars, a reasonably fair value of the premises at the time of the sale, be credited against the mortgage debt."

The apparent reason for the order confirming the second sale, denying any deficiency judgment, and ordering that the sum of $3,500 be credited against the mortgage debt, is disclosed by the following language of the trial court's decision filed in connection with the entry of said order:

"The price bid at the first sale was $1,600 and the price bid at the second sale was $1,500. The second sale was held on February 1, 1936, and now almost three years after said sale and in total disregard of the court's order that the option of resale be exercised within sixty days, the plaintiffs now appear asking that the sale be confirmed and that a deficiency judgment in a large amount be entered in favor of the plaintiffs.

"The sale will be confirmed and the sum of $3,500, a reasonably fair value of the premises at the time of the sale be credited against the mortgage debt."

The plaintiffs have appealed from the two orders; that is from the first order denying confirmation and ordering a resale and from the last order confirming the sale and denying judgment for deficiency. It is clear that the court exceeded its equitable power in both instances. In its order of October 12, 1935, the court found the highest market value of the premises at that time to be $4,500 and that the lowest market value was $3,000. The court found that the plaintiffs' bid of $1,600 at the sale was unfairly inadequate and inequitable. The court ordered that the sum of $3,500 be credited upon the mortgage debt or that in the alternative a resale of the premises might be had at the instance of the plaintiffs on or before sixty days from the date of the order. It is apparent that the court attempted to follow the rules specified by this court in *Suring State Bank v. Giese,* 210 Wis. 489, 492, 493, 246 N. W. 556. It is there said that under the circumstances existing, it was within the power of a court of equity to take the following steps for the protection of the rights of parties to a foreclosure action:

"(1) The court may decline to confirm the sale where the bid is substantially inadequate.

"(2) The court, in ordering a sale or a resale, may, in its discretion, take notice of the present emergency and, after a proper hearing, fix a minimum or upset price at which the premises must be bid in if the sale is to be confirmed.

"(3) The court may, upon application for the confirmation of a sale, if it has not theretofore fixed an upset price, conduct a hearing, establish the value of the property, and, as a condition to confirmation, require that the fair value of the property be credited upon the foreclosure judgment. If an upset price has been established, the plaintiff may be required to credit this amount upon the judgment as a condition to confirmation. If the fair value as found by the court, when applied to the mortgage debt, discharges it, there will be no occasion for the entering of a deficiency judgment. In

case this procedure is adopted by the court, the option should be given to the plaintiff to accept or reject it. In the event of its rejection, the resale of the property should be ordered."

In connection with its order of October 12, 1935, the court found the highest market value of the mortgaged premises at the time of the sale to be $4,500, and the lowest market value to be $3,000, and then ordered that the sum of $3,500 be credited upon the mortgage debt or that in the alternative a resale of the premises be had. It appears that in fixing the highest market value at $4,500 and the lowest market value at $3,000, the court took into consideration what the premises in question sold for at a mortgage foreclosure sale back in 1918. Clearly, this was no test of the "fair" or "real value" as of September 18, 1935, or February 1, 1936. As a condition to confirmation, the upset price fixed should not exceed the minimum value. While in its order of October 12, 1935, the court found the highest market value of the premises at the time of the sale to be $4,500 and the lowest market value at said time to be $3,000, in its opinion filed with the order, the court said:

"It is utterly impossible to be anything but ridiculous in attempting to arrive at what is strictly called present market value of real estate because the market for a long time has been so depressed that one can only arrive at potentialities or actual values of the property, having in mind the purposes for which the property can be used in normal times."

The premises in question consist of 118.35 acres of sandy soil without any habitable buildings thereon, located in Marinette county, the assessed value of which is indicated by the taxes from the year 1932 to 1937, which did not exceed in any year the sum of $25. In *Kremer v. Rule,* 216 Wis. 331, 339, 257 N. W. 166, the court said:

"When the conscience of the court is shocked at the inadequacy of a bid, and the court feels impelled to determine the *real value* of the premises for the purpose of giving to the plaintiff mortgagee the option to credit the amount thereof

on the foreclosure judgment, it should direct its attention to the matter of determining the *real value* of the premises as of the time of the foreclosure sale. The upset price also should bear some reasonable relation to the value of the security at the time of sale. *Michigan Trust Co. v. Dutmers,* 265 Mich. 651, 252 N. W. 478.

" 'Real value of the premises,' as used in the *Suring Case,* should approximate that price which a person willing and able to buy the property would reasonably pay for it, not for purposes of speculation, but for that use to which it has been or reasonably may be put.

"While 'real value' as herein defined may, in the opinion of a court, be substantially the same as 'minimum or upset price,' especially when applied to an ordinary farm or comparatively small property, 'upset price' generally means that price which must be bid if confirmation by a court is to be expected."

If the plaintiffs' bid of $1,600 at the sale held on September 18, 1935, was so inadequate as to shock the conscience of the court, the court had the power to order a resale of the premises, and, in that connection, the court had the power to fix a minimum or upset price at which the premises must be bid in at the resale as a condition to confirmation, but the court had no power to fix the highest market value and the lowest market value of the premises, divide the difference, and call it an upset price which must be credited upon the mortgage debt as a condition to confirmation on a subsequent resale.

What has been said with reference to the first order is applicable to the order of December 31, 1938, confirming the sale of February 1, 1936, and denying a judgment for the deficiency. However, we have the further fact that the court confirmed the sale, denied judgment for the deficiency, and ordered that the sum of $3,500, which sum the court fixed as the reasonably fair value of the premises at the time of the sale, be credited against the mortgage debt. This was beyond the power of a court of equity or a court of law. In *Big Bay Realty Co. v. Rosenberg,* 218 Wis. 318, 321, 259 N. W. 735,

referring to the *Suring State Bank Case, supra,* the court said :

"That case and the subsequent cases of *Kremer v. Rule,* 216 Wis. 331, 257 N. W. 166, and *Weimer v. Uthus,* 217 Wis. 56, 258 N. W. 358, make it plain that the power of a court of equity to prevent an unconscionable result is to be exercised with respect *to the sale,* that if the sale be confirmed the legal consequences prescribed by the statute of the state of Wisconsin follow. There is no power in a court of equity to deny a party his statutory rights." To the same effect see *Buel v. Austin,* 219 Wis. 397, 263 N. W. 82; *Drach v. Hornig,* 221 Wis. 575, 267 N. W. 291.

It should be noted that the power of a court of equity to prevent an unconscionable result must be exercised with respect to the sale of the mortgaged premises. When the court by proper order confirms the sale, and where the judgment provides for a deficiency in case there be one, the court has no discretion as to giving judgment therefor. The fact that the resale was not had within the sixty-day period specified in the order of October 12, 1935, is of no particular consequence.

This will necessitate a resale of the mortgaged premises unless an option be given to the plaintiffs which they may accept. In fixing a new minimum or upset price, as a condition to confirmation of the resale, such price should be fixed in accord with the rules announced in *Kremer v. Rule, supra.*

*By the Court.*—The appeal from the order of October 12, 1935, is dismissed because not seasonably taken. The order of December 31, 1938, is reversed, and record remanded with instructions for further proceedings in accord with this opinion.