Rio-Fall River Union Bank, Plaintiff: Paulson and others, Trustees, Appellants, vs. Hollnagel and others, Respondents.

*February 14—March 12, 1940.*

For the appellants there was a brief by *Morrison & Callahan* of Columbus, and oral argument by *Carroll Callahan*.

For the respondents there were briefs by *Lueck, Skupniewitz & Lueck* of Beaver Dam, and oral argument by *Arthur W. Lueck.*

MARTIN, J. Before taking up the legal questions involved on this appeal, we think it proper to state the attitude of the

trial court with reference to a deficiency judgment as disclosed by the record. During the progress of the hearing on appellants' motion for a confirmation of the sheriff's report of sale and for judgment for the amount of the deficiency, the court said:

"The Court: 'I'll tell you how the court feels about this. I think a deficiency judgment is an invention of the devil. I don't think there ever should have been such a thing. Of course the law provides for it, and I don't know as the law permits us to deny it or ignore it now. The parties get together on a loan, I presume they did here. We can assume that. The party that is making the loan places his value on the security, figures that there is ample margin there and is relying on that security when he makes the loan; he is not relying on the individuals. There may be some instances when they do that but I doubt whether this is one case where they were contemplating they would get a deficiency judgment if the land didn't bring that amount. They undoubtedly figured there was ample margin there and the loan was made on that assumption. It does not seem fair if the bottom goes out of values, as it has on all real estate in the last twenty years, that the poor devil that has given the mortgage should stand all of the loss and the person making the loan should step out and not stand any of it. The value is gone. I don't know why they are insisting upon a deficiency judgment here, whether the trustees think they are in duty bound to do it and throw the whole matter on the court, or whether they actually want to get it out of the mortgagor if it is possible to do that. But I never have been able to see that a deficiency judgment is right.' "

Thereupon, Mr. Lueck remarked: "The matter of impairment of contract is not involved in this matter."

"The Court: 'Of course that doesn't change the equities or matter much. The mortgagee is getting the full security; he is getting all he ever figured on at any time. Of course if somebody has stepped in and assumed the indebtedness, that doesn't change the fact that the mortgagee is getting the full security. But I think the law should provide that when

he gets the full security he gets enough. How much does the mortgage amount to?'

"Mr. Lueck: '$4,800.'

"Mr. Morrison: 'They bid it in with the taxes for $2,500.'

"The Court: 'Under the testimony it wouldn't strain the conscience of the court to find that the fair value is $4,800, enough to cover it. I will find now that $4,800 is the fair value.'

"Mr. Lueck: 'The court intended to find that $4,800 is the fair value, that the full amount of the mortgage indebtedness and interest and costs is the fair value? There is some difference there.'

"The Court: 'What is the difference?'

"Mr. Lueck: 'Might be more than $4,800.'

"The Court: 'Find that the fair value is the full amount now due under the mortgage including costs, expenses, taxes and attorney fees, whatever that amount is.' "

While we are not entirely familiar with the inventions of the devil, we are certain that a deficiency judgment is not one of them. The statutory law of this state has provided for a deficiency judgment in mortgage foreclosure actions ever since 1862 (sec. 3 of ch. 243, Laws of 1862).

It is apparent from the record that the trial court, either because of his attitude toward a deficiency judgment, or for other reasons, declined to follow the well-established law of Wisconsin in the instant case. When the court first announced from the bench that it would not strain the conscience of the court to find that the fair value of the mortgaged premises was $4,800, and at first so found, upon being advised that the amount due might be more than $4,800, the court then found that the fair value was "the full amount now due under the mortgage including costs, expenses, taxes and attorney fees, whatever that amount is." Every litigant is entitled to a fair and impartial hearing on both the facts and the law in all matters presented to the court, regardless of its personal convictions.

It would seem unnecessary at this time to refer to the many decisions of this court during the past six or seven years with reference to the rules applicable to deficiency judgments in mortgage foreclosure actions commencing with the decision in *Suring State Bank v. Giese* (1933), 210 Wis. 489, 246 N. W. 556, up to the more recent decision in *Brinckley v. Sager* (1939), 232 Wis. 88, 286 N. W. 570. Under these and the many other intervening decisions, this court has said that the court may, upon application for the confirmation of a sale, if it has not theretofore fixed an upset price, conduct a hearing to establish the value of the property and, as a condition of confirmation, require that the fair value of the property be credited upon the foreclosure judgment. If an upset price has been established, the plaintiff may be required to credit this amount upon the judgment as a condition to confirmation. However, if this procedure is adopted by the court, the option should be given to the plaintiff to accept or reject it. In the event of its rejection, the resale of the property should be ordered (see *Suring State Bank v. Giese, supra,* p. 493). In the instant case, appellants objected to the crediting of the full amount due on the mortgage debt as a condition to confirmation of the sheriff's report of sale.

It should be noted that the power of a court of equity to prevent an unconscionable result must be exercised with respect to the sale of the mortgaged premises. In *Northwestern Loan & Trust Co. v. Bidinger* (1937), 226 Wis. 239, 246, 276 N. W. 645, the court said:

"Under our decisions it is optional with the mortgagee whether he will credit the fair value on the mortgage debt as a condition of immediate confirmation. The crediting of the amount fixed by the court cannot be compelled. If the amount fixed by the court is not credited, and the bid at the sale shocks the conscience of the court, a resale of the premises is perhaps the only alternative."

The respondents Piszczeks argue that at the time they assumed and agreed to pay the mortgage indebtedness, viz., on September 22, 1936, sec. 278.105 (2), Stats., 1935, was in force, and that therefore the instant case is one where a pre-existing mortgage contract will not be impaired by compelling the credit of the fair value of the mortgaged premises as found by the court. We fail to see any merit in this contention, since the respondents Piszczeks, by assuming and agreeing to pay the mortgage indebtedness, became liable to the same extent as though they were the original mortgagors (see *Halbach v. Trester,* 102 Wis. 530, 533, 78 N. W. 759; *Kuener v. Smith,* 108 Wis. 549, 553, 84 N. W. 850). In *Northwestern Loan & Trust Co. v. Bidinger, supra,* at page 247, the court said:

"In our opinion the enactment of so much of ch. 449, Laws of 1935, as is now sec. 278.105 (2), gave to the courts no powers which they did not already possess. *Suring State Bank v. Giese, supra.* At most the statute was nothing more than a legislative recognition or approval of the law of the *Suring State Bank Case."*

In the instant case, the complaint prayed for a deficiency judgment if there was a deficiency. The judgment of foreclosure and sale specifically provided for a deficiency judgment in the event that the proceeds of the sale were insufficient to pay the mortgage indebtedness in full.

"The power of a court of equity is limited to securing justice in a particular case and to preventing an inequitable, unconscionable, and shocking result."

"The power of a court of equity to limit a right given to a party by the statute should be exercised with care and circumspection, and solely for the purpose of preventing a result which shocks the conscience of the chancellor." *Weimer v. Uthus,* 217 Wis. 56–58, 258 N. W. 358.

From what has been said, it follows that the order appealed from must be reversed.

By way of aid to the court in fixing an "upset price" as a condition to confirmation, the assessed value of the mortgaged premises or what the property may bring at a private sale is not the test of the real value of the mortgaged premises which the court should apply.

" 'Real value of the premises,' as used in the *Suring Case*, should approximate that price which a person willing and able to buy the property would reasonably pay for it, not for purposes of speculation, but for that use to which it has been or reasonably may be put." *Kremer v. Rule*, 216 Wis. 331, 339, 257 N. W. 166.

*By the Court.*—Order reversed, and cause remanded for further proceedings in accordance with this opinion.