WELFARE BUILDING & LOAN ASSOCIATION, Appellant, vs. GEARHARD and others, Respondents.

*June 3—June 20, 1940.*

230

231

For the appellant there was a brief by *Frank F. Wolfgram* and *Benjamin S. True,* both of Milwaukee, and oral argument by *Mr. True.*

For the respondents Gearhard there was a brief by *Stern, Murphy & O'Brien,* attorneys, and *John M. O'Brien* and *William J. O'Brien* of counsel, all of Milwaukee, and oral argument by *John M. O'Brien.*

*Arthur W. Taylor* of Milwaukee, argued orally for the respondents Rowell.

MARTIN, J. The defendants Gearhards built the home in question in 1931 intending to occupy it as their residence, but because of some financial reverses they concluded that they could not maintain the home, and in the early spring following the completion of the house they sold same to defendants Rowells who assumed and agreed to pay the plaintiff's mortgage. Rowell defaulted almost immediately in the payments required of him. At or about this time the defendant American Loan Company obtained a judgment against the defendant M. W. Rowell in the sum of $416.54, which became a subsequent lien against the mortgaged premises. Thereafter Rowell and his wife reconveyed the premises to defendants Gearhards. There were then some negotiations toward a settlement of the mortgage indebtedness between the defendants Gearhards and the plaintiff whereby the former offered to reconvey the property to the latter, but because of the judgment against M. W. Rowell the negotiations ended.

It appears from the record that plaintiff at both hearings on its motions for confirmation of the sheriff's report of sale offered to accept the principal sum of its mortgage, namely, $10,500 in full settlement and satisfaction of the amount due under the foreclosure judgment.

The following is the substance of the testimony of the several witnesses as to the value of the mortgaged premises as of the time of the first sale: Fritz W. Beck, on behalf of

the plaintiff, testified that he has been in the appraisal business since 1924; that since 1934 he has devoted his entire time to that business; that he was a member and vice-chairman of the valuation committee of the Milwaukee real-estate board; that he makes appraisals for the state banking commission; and that on March 11, 1939, he made an appraisal of the property in question, appraising the lot at $1,750 and the improvements at $9,470, a total of $11,220. In making his appraisal he took reproduction costs from which he deducted depreciation at two per cent per year. The reproduction cost less the depreciation over a period of eight years left a net value for the house of $9,470, plus the value of the lot which gave a net value of $11,220. In connection with his appraisal he testified that the house and lot next door to the mortgaged premises in question were then being offered for sale for $12,000; and that this house and lot had been sold on September 30, 1937, for $11,500. He further testified that he had appraised thousands of properties and was in the contracting business for a number of years prior to 1932, that since that time he had kept himself informed on the cost of materials, labor, and other data entering into the construction of buildings.

Gustave J. Dreyer, who testified on behalf of plaintiff, stated that he was engaged in the real-estate business and in making appraisals; that during the past ten years he had made over two thousand appraisals; that he made an appraisal of the mortgaged premises in question on April 17, 1939; and that he appraised the value of the lot at $1,600 and the then value of the house at $9,987.50, a total of $11,587. He further testified that vacant lots immediately to the north of the mortgaged premises were being offered for sale at $1,600.

Mr. A. H. Koepke, president of the plaintiff company, testified that the assessed valuation of the mortgaged premises for 1938 was $8,275; that he had been in the building

and loan business for seventeen or eighteen years and in the real-estate business for thirty years; that he was familiar with the property in question, saw the house built and inspected the building and the cost of construction. He fixed the value of the property at $10,500 which was the amount his company had bid for same at both foreclosure sales.

Charles R. Richter, who had been in the real-estate business since 1927, testified on behalf of defendants. He testified:

"I appraised the property from a market standpoint and would advise the owner to list it at $13,500 with the understanding that he would probably get between $12,000 and $13,000. From the standpoint of home ownership it would probably bring $12,500 as between a willing seller and a willing buyer."

William F. Thalman testified on behalf of defendants that he was a general contractor; that he built the house in question in 1931; and that his contract price was about $13,000. He figured the replacement cost at $11,724. As to the value of the lot, he testified:

"I am only slightly familiar with lots thereabouts, although about four or five years ago I built possibly eight or ten houses to the south of this property, and I paid in the neighborhood of $2,000 for 50-foot lots."

The lot in question is 50'x125'.

The defendant Norbert E. Gearhard testified that he paid about $1,500 for the lot; that the house cost him about $13,000; and that he had spent about $700 on improving the lot. It appears that in March, 1932, Gearhards sold the mortgaged premises to defendants Rowells for $12,000, that is, Rowells, as a part of the purchase price, assumed the payment of plaintiff's mortgage and in addition gave Gearhards a second mortgage for $1,500.

From the remarks of the court, as hereinbefore indicated, it got more satisfactory evidence from its own examination of the premises than it did from the testimony of the witnesses as to the value of the mortgaged premises.

"It is also well settled in this state that mere inadequacy of the bid or consideration of a mortgage foreclosure sale does not ordinarily justify the court in refusing to confirm such a sale unless the inadequacy of the bid shocks the conscience of the court or results in an injustice. *Northwestern Loan & Trust Co. v. Bidinger,* 226 Wis. 239, 245, 276 N. W. 645; *A. J. Straus Paying Agency v. Jensen,* 226 Wis. 462, 277 N. W. 105." *Cameron v. Heinze,* 231 Wis. 479, 487, 286 N. W. 47.

In *Rio-Fall River Union Bank v. Hollnagel,* 234 Wis. 181, 187, 290 N. W. 636, the court quoted approvingly the following from *Weimer v. Uthus,* 217 Wis. 56–58, 258 N. W. 358:

" 'The power of a court of equity is limited to securing justice in a particular case and to preventing an inequitable, unconscionable, and shocking result.' . . .

" 'The power of a court of equity to limit a right given to a party by the statute [deficiency judgment] should be exercised with care and circumspection, and solely for the purpose of preventing a result which shocks the conscience of the chancellor.' "

To the same effect, see *Buel v. Austin,* 219 Wis. 397, 263 N. W. 82; *Drach v. Hornig,* 221 Wis. 575, 267 N. W. 291; *Brinckley v. Sager,* 232 Wis. 88, 286 N. W. 570.

As indicated above, the court failed to fix an upset price as a condition of confirmation of the third sale. Simply saying that the value of the mortgaged premises is in excess of the amount due under the judgment of foreclosure is not the equivalent of fixing an upset price.

In *Kremer v. Rule,* 216 Wis. 331, 339, 257 N. W. 166, the court said:

"When the conscience of the court is shocked at the inadequacy of a bid, and the court feels impelled to determine the real value of the premises for the purpose of giving to the plaintiff mortgagee the option to credit the amount thereof on the foreclosure judgment, it should direct its attention to the matter of determining the real value of the premises as of the

time of the foreclosure sale. The upset price also should bear some reasonable relation to the value of the security at the time of sale."

As a condition to confirmation the upset price should not exceed the minimum value. *Brinckley v. Sager, supra.*

In *Kremer v. Rule, supra,* the court ordered confirmation of a bid of $10,000 where the judgment was for $12,769 and the lower court had fixed an upset price of $13,325. In that case the trial court had three times refused confirmation and three times the premises had been sold. At page 341 the court said:

"Whatever might be said in justification of the refusal of the court to confirm the first sale under the circumstances then appearing, ceases to have force or effect so far as the second or third sales are concerned. There was no testimony adduced at the hearing tending to show that a better price would be bid at the second sale or at the third sale. The second sale demonstrated the futility of another sale and the futility of still another sale was demonstrated when the lands were offered at the third sale."

In the instant case there is no suggestion that a third sale will produce any different result. There was no bid at either the first or the second sale except the plaintiff's bid of $10,500. There is no likelihood of a better bid if a third sale is had.

"If upon a resale no higher bids are made, that fact should be considered by the court when again called upon to confirm a sale. *Kremer v. Rule, supra.*" *Northwestern Loan & Trust Co. v. Bidinger,* 226 Wis. 239, 246, 276 N. W. 645.

Courts should be equally solicitous of the rights of mortgagors and mortgagees in foreclosure actions. In the instant case we are compelled to conclude that there was an abuse of discretion in denying the plaintiff's motion for confirmation of the second sale and in denying the plaintiff a deficiency judgment for the amount shown by the sheriff's report of sale.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order confirming the sheriff's report of sale and for the entry of a deficiency judgment against defendants for the amount of the deficiency shown by the sheriff's report of sale.