WELFARE BUILDING & LOAN ASSOCIATION, Respondent, vs. HENNESSEY, Appellant.*

*October 9—November 5, 1957.*

* Motion for rehearing denied, with $25 costs, on January 7, 1958.

124

For the appellant there were briefs by *Vincent D. Hennessey, in pro. per.,* attorney, and *Harry R. Glick* of counsel, both of Milwaukee, and oral argument by *Mr. Hennessey.*

For the respondent there was a brief by *Frank F. Wolfgram* and *Jack C. Werner,* both of Milwaukee, and oral argument by *Mr. Werner.*

WINGERT, J.   Several questions are presented by this appeal.

1. *Is the case moot?* Defendant's application asked for a postponement of advertisement of sale "until the expiration of eighteen (18) months from the date when judgment herein was perfected." It is now more than twenty-one months since the judgment was perfected. Hence defendant has already had more than he asked for.

In an action to oust a public officer because of violation of the Corrupt Practices Act, the case became moot when it became apparent that the appeal from a judgment for the defendant could not be decided before the officer's term expired; and this court therefore dismissed the appeal. *State ex rel. La Follette v. Kohler,* 202 Wis. 352, 232 N. W. 842.

On the other hand, an appeal from an order in a divorce case providing for custody of a child for sixty days was decided on the merits after the expiration of the sixty-day period, where there was reason to believe that if the appeal were dismissed, application would again be made for a similar order.

". . . while the particular order complained of is moot, the controversy over the custody of this child is not moot and

should not be so considered, . . . therefore the questions raised on this appeal should receive consideration to the end that if and when this controversy is revived it may be determined upon correct principles and upon proper procedure." *Smith v. Smith,* 209 Wis. 605, 609, 245 N. W. 644.

In the present case it is to be expected that if we refuse to consider the appeal on the merits, another application for another postponement will be made by the defendant, and another appeal taken if it be denied. Therefore this appeal falls within the principle of the *Smith Case,* and should not be dismissed as moot.

2. *Might the judgment properly have been modified?* Reading the judgment signed by the clerk in the light of the court's conclusions of law and direction for judgment quoted in the statement of facts, we construe it as authorizing the plaintiff to proceed with advertisement of sale at the expiration of twelve months after perfection of judgment, if redemption has not been made in the meanwhile. Defendant asked the court to modify that provision by extending the specified period of time from twelve months to eighteen months.

No case was made for modification under sec. 269.46 (1), Stats., which provides that the court may "at any time within one year after notice thereof, relieve a party from a judgment, . . . against him obtained, through his mistake, inadvertence, surprise, or excusable neglect. . . ." Here there is no showing that the judgment was obtained through any mistake, inadvertence, surprise, or excusable neglect.

Sec. 269.46 (3), Stats., provides that a judgment may be reviewed by the court "at any time within sixty days from service of notice of entry thereof, *but not later than sixty days after the end of the term of entry thereof."* The judgment in the instant case was entered at the January, 1956, term of the circuit court, which ended on the first Monday in April, 1956 (sec. 252.06). Hence defendant's application, filed in January, 1957, came too late to invoke relief under that provision.

It follows that the judgment could not be modified on defendant's application, because of lapse of time. Hence we need not consider whether in a judgment of foreclosure and sale the court may in the exercise of its equitable powers provide for a longer period than one year before sale may be advertised, or whether on the other hand the provision of sec. 278.10 (2), Stats., that "no such sale shall be made or advertised until the expiration of one year from the date when such judgment is entered;" is to be construed as prohibiting the court from allowing a longer period than one year in the judgment.

3. *Is defendant entitled to equitable relief from the judgment?* Defendant sought not only a modification of the original judgment, but also an injunction against advertisement of foreclosure sale prior to the expiration of eighteen months after judgment. The latter feature of his application may be treated as invoking the familiar power of courts of equity to relieve against judgments whose enforcement would be inequitable.

For present purposes we may assume, without deciding, that equity might relieve a mortgagor from that part of a foreclosure judgment which authorizes sale to be advertised and made as soon as possible after the expiration of one year from entry of the judgment, on a sufficient showing that enforcement of that part of the judgment would offend against equity and good conscience. Such power should in any event be exercised sparingly, and only in cases where serious inequity, approaching at least the unconscionable, would result from carrying out the original judgment.

The moving paper in the present instance, defendant's own affidavit, presents no such case. No fraud is asserted, no sharp practice on plaintiff's part, no overreaching; substantially nothing but the economic misfortune of defendant and his lay opinions with respect to value and the real-estate market.

In substance the moving affidavit asserts that the property has long been defendant's homestead; that it is a desirable property in a first-class residential neighborhood; that for several months defendant expected to be able to redeem it from the foreclosure judgment; that for sometime after entry of judgment on January 19, 1956, two of the three corner properties at his corner had "For Sale" signs on them, and he thought it would be detrimental to put a similar sign on his property; that early in the summer of 1956 he took steps to sell his property at private sale and spoke to several brokers about it, but they wanted exclusive listing, which he did not think it wise to grant; that in August he advertised the property in the Milwaukee Journal for the price of $39,000; that in September he listed it with several brokers at $39,000 on open listing; that in November he gave an exclusive listing to one broker at $39,000 and that such broker actively and vigorously pushed the sale; that on January 6, 1957, he authorized the broker to take $34,500; that winter and early spring is the dull season for residence sales; that for the sheriff to advertise sale at the end of one year after judgment (January, 1957) would interfere with the broker's efforts to sell at private sale and would tend to depress the price obtainable below fair market value by disclosing it as a distress sale. The total amount due on the judgment was less than $20,000 and on September 1, 1957, would be less than $22,000. Defendant's property was appraised for loan purposes at $31,500 by plaintiff in 1952 and at $36,000 by Northwestern Mutual Life Insurance Company in 1955. Comparable properties in the neighborhood have sold at from $34,000 to $37,000 in the past two years. Defendant applied to plaintiff in December, 1956, for an extension of time of sale, and did not learn until January 11, 1957, that such request was refused.

Defendant's affidavit is unsupported. From the court's findings and the counteraffidavit filed on plaintiff's behalf, it appears that the loan was originally $14,750 on a $31,400

valuation by plaintiff, and that with all arrearages of taxes and interest there was over $21,000 owing on March 26, 1957. Plaintiff is a Wisconsin building and loan association, limited by sec. 215.22 (5), Stats., to 50 per cent loans where as here the maturity is five years without amortization requirement.

In our opinion the showing thus made by defendant so clearly falls short of that required to activate the power of equity to relieve against the portion of the judgment complained of, that a favorable response to it would be beyond the permissible discretion of the court. The mortgagor's unsuccessful efforts to sell at his own price, his hopes for better luck in the future, his opinions as to the value of his property and the adequacy of the mortgagee's security, and his fears that a sheriff's sale will yield less than fair market value, do not add up to anything unusual in such cases, and do not warrant the intervention of an equitable power that is reserved for the relief of extraordinary hardship and inequity. No abnormally depressed economic condition is shown, such as that which almost destroyed the market for real estate in the great depression and moved the courts and legislature to intervene on behalf of mortgagors. See *Suring State Bank v. Giese,* 210 Wis. 489, 246 N. W. 556; *Rio-Fall River Union Bank v. Hollnagel,* 234 Wis. 181, 186, 290 N. W. 636. A mortgage foreclosure is an unhappy business at best for the mortgagor, but mortgagees too have rights and problems.

When an equitable discretion is invoked, we would normally leave the matter to the trial court to determine in the first instance. Here that court disposed of the case on a jurisdictional ground which we do not find it necessary to pass upon. We find the case on the merits so clear, and the defendant has already achieved such a long delay in sale, that we think it best to express our own views on the discretionary aspect of the matter without remanding it to the lower court for decision and thus perhaps inviting another appeal.

*By the Court.*—Order affirmed.