CAMERON and another, Respondents, vs. HEINZE, Executrix, Appellant.

*May 8—June 6, 1939.*

*Charles L. Mullen* of Milwaukee, for the appellant.
*Charles E. Lyon* of Elkhorn, for the respondents.

NELSON, J. The defendant first contends that the sheriff had no authority to conduct a sale of the mortgaged premises and therefore the sale was void. This contention is based upon the language referred to in the statement of facts which provided that the plaintiff should apply for a court order determining the date and place of sheriff's sale in accordance with the statute of this state. That provision was probably inadvertently included in the judgment in purported compliance with the provisions of sec. 278.103, Stats. 1933, an emergency statute which had been repealed by ch. 319, Laws of 1935. The provision of the judgment is therefore ambiguous in that it purports to require the plaintiff to apply to

the court for an order determining the date and place of sheriff's sale in accordance with the statutes for this state. Sec. 278.103, Stats. 1933, applied to farm or homestead foreclosure actions in which judgments of foreclosure and sale had been entered prior to the effective date of that statute, and provided that in such an action the plaintiff "shall, before the commencement of publication of notice of sale or thereafter and before confirmation of sale, if costs of notice and publication are paid or tendered apply to the court for an order directing the time and place of such sale and shall serve notice of the application therefor by mail, directed to the last-known address, posted at least five days before the hearing, upon the record owner of the equity of redemption and upon all parties who have appeared in the action or their attorneys. . . ." At the time of the judgment and sale herein no statute required the plaintiff to apply to the court to determine the date and place of the sheriff's sale. The defendant does not suggest that the date and place of the sheriff's sale would have been different had the plaintiff applied to the court for an order, that the date was not timely, that the place was improper, or that an extension of the equity of redemption would have been applied for. The judgment itself did not provide that the application to the court should be upon notice to anyone. It is our opinion that the attack upon the sale, based upon the failure of the plaintiff to apply to the court for the order mentioned, is without merit. Upon the hearing held on plaintiffs' motion to confirm and for a deficiency judgment, the failure of the plaintiff to obtain an order determining the date and place of sheriff's sale was not stressed until after the trial court had rendered its decision. Under the circumstances, we consider that the failure of the plaintiff to apply to the court for an order was at most a mere irregularity which should not be held to render the sale void.

The defendant next contends that the sale price was so inadequate as to shock the conscience of the court. In sup-

port of this contention, the defendant argues that the premises originally purchased consisted of about one hundred acres for which the Morrisons in 1926 agreed to pay $24,000; that the lands in question have been platted and substantially seventy per cent of the lots are still unsold; that the 1937 assessed valuation of the lots remaining was $25,975; that testimony was adduced tending to show that in the judgment of the witness some of the remaining lake lots could be sold for $10 a front foot and other lots could be sold if the prices thereof were sufficiently reduced. The assessed valuation of the lots for the year 1937, and the testimony just mentioned, obviously did not impress the trial court in passing upon the asserted inadequacy of the plaintiffs' bid.

The defendant further contends that the court did not credit the fair value of the unsold lots on the mortgage as required by sec. 278.105 (2), Stats. 1937. That section provides, in substance, that where the mortgaged premises sell for less than the amount of the judgment there shall be no presumption that such premises sold for their fair value, and that no sale shall be confirmed until the court is satisfied that the fair value has been credited on the mortgage. What was said in connection with the defendant's contention that the price bid was so inadequate as to shock the conscience of the court is applicable here. From the opinion of the trial court it clearly appears that the court indulged in no presumption that the premises sold for their fair value, but based its conclusion upon the evidence adduced which showed that the original farm unit had been destroyed; that the buildings and fences had been removed; that the lands had been platted; that the lots which had been sold and lost on tax deeds were so located as to leave a very checkered condition of the premises; that after the lapse of many years, a great many of the lots remained unsold; that they were subject to a substantial amount of delinquent taxes which had not been paid for five or six years. It cannot be claimed that the trial court did not

have the applicable law in mind or that he ignored it in reaching its conclusion.

In *Northwestern Loan & Trust Co. v. Bidinger,* 226 Wis. 239, 245, 276 N. W. 645, sec. 278.105 (2), Stats. 1935, was given careful consideration. The words contained therein, "fair value of the premises" were construed. After considering our prior holdings in *Suring State Bank v. Giese,* 210 Wis. 489, 246 N. W. 556; *Kremer v. Rule,* 216 Wis. 331, 257 N. W. 166; and *Weimer v. Uthus,* 217 Wis. 56, 258 N. W. 358, it was said:

"From these holdings, it is apparent that 'fair value,' as used in our cases and which we have held that a court, in the exercise of its equitable powers, may require a mortgagee to credit upon the mortgage indebtedness as a condition of immediate confirmation, is that amount which, under all of the circumstances of a given case, will not shock the conscience of the court. A bid which, under all of the circumstances, is grossly insufficient or unconscionably inadequate and which, if credited upon the mortgage indebtedness, would operate as a great injustice to the mortgagor, does not, of course comply with the concept embodied in the term 'fair value.' 'Fair value' obviously does not mean 'market value,' as that term is generally understood, or that value which the property may probably have in the future under more favorable economic conditions, or that value which it may have if the property be remodeled and put to other or more extensive uses which possibly may prove more profitable."

As before stated, the trial court was satisfied that $4,000 represented the fair value of the premises at the time of the sale. The defendant's argument, based upon the purchase price of the farm, the amount thereof which had been paid, the assessed value of the lots unsold, the opinion of a witness that some of the lake lots might be sold for $10 per front foot, and other lots not on the lake might be sold if the prices thereof were considerably reduced, ignores important realities. The sale of lots practically ceased in 1929. The lots still subject to the mortgage can properly be considered only as parts of a subdivision, the greater portion of which has

not been sold, and may not presently or in the future be salable. Their value is obviously little unless purchasers may be found. Many of the lots have been lost to the county on tax deeds, and many of the other lots are subject to tax deeds. No purchasers, other than the plaintiffs, were apparently interested in buying. The plaintiffs must immediately lay out considerable sums to redeem the delinquent taxes. If the plaintiffs expect to sell their lots for prices satisfactory to them they must first purchase from the county many of its lots as it would undoubtedly be difficult, if not impossible, for the plaintiffs to sell their lots so long as prospective purchasers can purchase lots from the county at prices probably not greatly in excess of the amount of the taxes, penalties, and expenses. The plaintiffs also, in order to effect sales, must improve both the trails and the lots. All of these things must be done under present economic conditions which doubtless are such as to prevent or discourage people from presently, or in the near future, acquiring lake lots or other lots close by for the purpose of erecting summer cottages or homes thereon. The trial court was familiar with all of these conditions and was, as a result, satisfied that the $4,000 was fair value.

In *Prudential Ins. Co. v. Cuttone,* 227 Wis. 48, 51, 277 N. W. 630, the following language from *Homestead Land Co. v. Joseph Schlitz Brewing Co.* 94 Wis. 600, 69 N. W. 346, was recited with approval:

" 'The granting or refusing of an application to set aside a judicial sale and order a resale, as a matter of favor, rests in the sound discretion of the court. It may confirm the sale, or refuse to confirm, set aside the sale and order a resale, in the exercise of discretion, to the end that justice may be done to all parties interested. . . . The determination of the trial court on such an application cannot be disturbed except for clear abuse of judicial discretion.' . . . "

It is also well settled in this state that mere inadequacy of the bid or consideration of a mortgage foreclosure sale does

not ordinarily justify the court in refusing to confirm such a sale unless the inadequacy of the bid shocks the conscience of the court or results in an injustice. *Northwestern Loan & Trust Co. v. Bidinger, supra; A. J. Straus Paying Agency v. Jensen,* 226 Wis. 462, 277 N. W. 105.

After the trial court announced its decision, the defendant's attorney stated that the record shows that neither he nor the defendant received or was served with a notice of the entry of judgment or a notice of sale. The plaintiffs' attorney thereupon stated:

"If the defendants still feel that the price which was bid for the mortgaged premises at the foreclosure sale was inadequate, the plaintiffs will gladly make a transfer of the property which was purchased at the sale to the defendant at the same figure."

It is stated in the plaintiffs' brief that that offer has never been accepted although the offer has never been withdrawn. That offer gave to the defendant an opportunity to acquire all of the unsold lots for $4,000, subject to the amount of the deficiency judgment, which together would aggregate no more than the actual amount of the indebtedness to the plaintiffs. This offer strongly tends to destroy the assertion that fraud or unfairness existed in conducting the sale of the premises.

After carefully considering all of the facts and circumstances appearing from the record and the testimony adduced at the hearing, we are of the opinion that the trial court, in confirming the sale, did not abuse its discretion.

*By the Court.*—Order affirmed.