FAMILY SAVINGS & LOAN ASSOCIATION, Plaintiff-Respondent, v. BARKWOOD LANDSCAPING COMPANY, INC., and others, Defendants: TRAPP, and others, Intervenors-Respondents. [Case No. 77–046.]†

FAMILY SAVINGS & LOAN ASSOCIATION, Plaintiff-Respondent, v. LAKESHORE COMMERCIAL FINANCE CORPORATION, and others, Defendants-Appellants: HANSEN, and others, Defendants: GREENBRIER APARTMENTS, Purchaser-Respondent. [Case No. 77–530.]†

Supreme Court

*Nos. 77–046, 77–530. Argued November 5, 1979.—Decided January 8, 1980.*

(Also reported in 286 N.W.2d 581.)

---

† Motions for reconsideration denied, without costs, on February 13, 1980.

192

For the appellants there were briefs by *Weiss, Steuer, Berzowski & Kriger,* attorneys, *Robert K. Steuer,* of counsel, *Walther & Halling, Hayes & Hayes* and *Chronus & Kotsonis,* co-counsel, and oral argument by *Robert K. Steuer,* all of Milwaukee. [Case No. 77–046. ]

For the respondents there was a brief by *Cook & Franke, S.C.,* attorneys and *John J. Ottusch,* of counsel, and oral argument by *Mr. Ottusch,* all of Milwaukee. [Case No. 77–046.]

For the intervenors-respondents there was a brief by *Frisch, Dudek & Slattery, Ltd.,* attorneys, *Thomas J. Arenz* and *Lynn R. Laufenberg,* of counsel, and oral argument by *Mr. Laufenberg,* all of Milwaukee. [Case No. 77–046.]

For the appellants there were briefs by *Weiss, Steuer, Berzowski & Kriger,* attorneys, *Robert K. Steuer* and *Scott B. Fleming,* of counsel; *Walther & Halling, Hayes & Hayes* and *Chronus & Kotsonis,* co-counsel, and oral argument by *Robert K. Steuer,* all of Milwaukee. [Case No. 77–530.]

For the respondent there was a brief by *Cook & Franke, S.C.,* attorneys, and *John J. Ottusch,* of counsel, and oral argument by *Mr. Ottusch,* all of Milwaukee. [Case No. 77–530.]

WILLIAM G. CALLOW, J. Case *No. 77–046* is an appeal from a judgment of foreclosure entered June 30, 1977, from an order setting aside judgment, sale, and confirmation entered March. 31, 1977, and from that portion of an order entered June 7, 1977, denying appellants' motions which requested the court find the funds held by the receiver on February 28, 1977, be considered as surplus funds to which the plaintiff had waived all claim by virtue of its prior bid or, in the alternative, require an upset price on resale equal to the amount of the old judgment. The companion case, *No. 77–530,* is an appeal from an order of the same court confirming sale and directing payment of the receiver's balance and denying the appellants' motion for a partial stay pending their appeal in *No. 77–046.*

The principal issue raised on appeal concerns the trial court's authority to vacate an earlier order confirming the sheriff's sale on foreclosure and to order a new sale.

Family Savings and Loan Association (Family) filed a foreclosure action in the Circuit Court for Ozaukee County. The summons and complaint named six mortgagors, one subordinate mortgagee, nineteen construction lien claimants, and seventy-seven tenants of the property as defendants and demanded a judgment of foreclosure and sale of the mortgaged premises. The subordinate mortgagee, Lakeshore Commercial Finance Corporation (Lakeshore), and four of the lien claimants— Barkwood Landscaping Co., Inc. (Barkwood), D & K Construction Corporation (D & K), Robert W. Nelson, Inc. (Nelson), and Sun Valley Pools (Sun Valley)—are the appellants.

The property subject to the foreclosure action consisted of seventy-one units in a condominium complex known as Greenbrier I and thirty acres of adjacent vacant land located in the city of Mequon, Ozaukee County. The property was security for four separate mortgage loans made to the six mortgagors in an amount in excess of two million dollars. Family claimed the mortgage loans were in default for failure to escrow $12,026.98 to cover real estate taxes on the property and declared the full principal and accrued interest due and payable.

Contemporarily, Family filed an order to show cause why a receiver should not be appointed to collect the rents and proceeds and to prevent waste of the premises known as Greenbrier I during pendency of the foreclosure proceedings. At a hearing on April 2, 1975, the court appointed Ralph J. Huiras receiver of the mortgaged premises.

Ultimately the answers, counterclaims, third-party complaint, and cross-complaint were withdrawn, the redemption period waived, and by stipulation the matter

proceeded as a default action. On December 21, 1976, the court ordered a judgment of foreclosure and sale with regard to the four mortgages and found, upon the undisputed testimony of the president of Family, that the balance due on the mortgages was $2,630,468.11, "exclusive of its costs, disbursements, attorneys fees, and exclusive of a report from the Receiver which may show a plus balance or a minus balance, depending upon what items have been paid." The court did not consider or determine plaintiff's attorney fees and receiver fees. The court ordered an immediate sale after publication.

On December 24, 1976, Circuit Judge Milton Meister signed the findings of fact and conclusions of law in this matter. On December 27, 1976, Family's attorney submitted the judgment of foreclosure to the clerk of courts for entry, but the amount of the submitted judgment was $2,786,350.27. This was $155,882.16 higher than that ordered by Judge Meister and included costs in the amount of $61,786, receiver fees of $9,327.50, attorney fees of $31,993.43, and real estate taxes of $52,775.-23.[1]

The property was sold at sheriff's sale in two parcels for a total of $2,802,613.41, which included the judgment balance of $2,786,350.27, plus 9 percent interest to the date of sale and costs incident to additional taxes and insurance to the date of sale.

Lakeshore and Barkwood claim that the first time they received notice that a judgment of foreclosure had been entered on December 24, 1976, the amount of the

[1] Although set forth in the findings of fact prepared by counsel for Family, such determination of costs, attorney fees, receiver costs and fees was directly contrary to the specific direction of the court because the court directed the judgment should "set forth the fact that there has been no determination . . . made . . . of the attorneys fees for the plaintiff, the plaintiff's costs, Receiver's fees, the fees for the attorney representing the Receiver."

judgment, and that a sheriff's sale had been held was when they received notice Family would move on February 28, 1977, for an order confirming the sale.

The hearing on confirmation of the sheriff's sale was held February 28, 1977, before J. Tom Merriam, Acting Circuit Judge. Judge Meister had retired. The receiver filed his accounting, and Family requested that the court confirm the sheriff's sale. Counsel for Lakeshore and Barkwood stated that he had no objection to confirmation of the sheriff's sale in the amounts of $588,283.23 for the parcel of vacant land and $2,214,330.18 for the parcel with the condominium units because the sale was in the best interests of all the creditors and all people with an interest in the real estate, but noted he had "further objections" he wanted to state on the record "after the confirmation." The court confirmed the sale.

Immediately after the court ordered confirmation of the sale, counsel for Lakeshore and Barkwood stated to the court that the judgment of foreclosure had been entered without notice to them and that there were irregularities in the judgment in that the amount of the judgment included not only the amount the court found due for principal and interest but also included additional amounts for costs and fees which explicitly had not been determined by the court, although the court ordered those amounts to be set out in the judgment. No subsequent hearing on determination of costs and fees had ever been held. Lakeshore and Barkwood requested the court to require Family, as purchaser at the sale, to give a receipt in payment of $2,630,468.11[2] and that the remainder of the purchase price be paid into court pending the adjudication and proof of any additional costs and making them part of the court judgment.

On March 3, 1977, Lakeshore and Barkwood filed a motion for relief from the judgment of foreclosure, pur-

---

[2] The receipt acts as a cancellation of the debt owed to Family.

suant to sec. 806.07 (1) (a) and (c), Stats.,[3] seeking to delete from the judgment the amounts awarded for costs, fees, and taxes which were not supported in the record. That same day the court entered an order prepared and submitted by Lakeshore and Barkwood confirming the sheriff's sale held February 18, 1976, and ordering Family to tender the purchase price excess over principal and interest in the sum of $172,145.30 to the clerk of courts, pending further action of the court. Family objected to the order confirming the sheriff's sale on the grounds that: (1) a motion for relief from the foreclosure judgment was scheduled for hearing, and if the court confirmed the sale when it proposed to review the judgment, it would be prejudicial to Family; (2) if the court re-

---

[3] Section 806.07, Stats., provides:

"806.07 **Relief from judgment or order.** (1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

"(a) Mistake, inadvertence, surprise, or excusable neglect;

"(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15 (3);

"(c) Fraud, misrepresentation, or other misconduct of an adverse party;

"(d) The judgment is void;

"(e) The judgment has been satisfied, released or discharged;

"(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

"(g) It is no longer equitable that the judgment should have prospective application; or

"(h) Any other reasons justifying relief from the operation of the judgment.

"(2) The motion shall be made within a reasonable time, and, if based on sub. (1) (a) or (c), not more than one year after the judgment was entered or the order or stipulation was made. A motion based on sub. (1) (b) shall be made within the time provided in s. 805.16. A motion under this section does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to set aside a judgment for fraud on the court."

viewed the judgment, it must set aside all proceedings held thereafter based on the judgment, including the sheriff's sale; and (3) pursuant to sec. 846.17, Stats.,[4]

[4] Section 846.17, Stats., provides:

"**846.17 Deed, execution and effect of.** Upon any such sale being made the sheriff or referee making the same, on compliance with its terms, shall make and execute to the purchaser, his assigns or personal representatives, a deed of the premises sold, setting forth each parcel of land sold to him and the sum paid therefor, which deed, upon confirmation of such sale, shall vest in the purchaser, his assigns or personal representatives, all the right, title and interest of the mortgagor, his heirs, personal representatives and assigns in and to the premises sold and shall be a bar to all claim, right of equity of redemption therein, of and against the parties to such action, their heirs and personal representatives, and also against all persons claiming under them subsequent to the filing of the notice of the pendency of the action in which such judgment was rendered; and the purchaser, his heirs or assigns shall be let into the possession of the premises so sold on production of such deed or a duly certified copy thereof, and the court may, if necessary, issue a writ of assistance to deliver such possession. Such deed or deeds so made and executed by the sheriff as above set forth shall be forthwith delivered by him to the clerk of the court to be held by the clerk until the confirmation of the sale, and upon the confirmation thereof the clerk of the court shall thereupon pay to the parties entitled thereto, or to their attorneys, the proceeds of the sale, and shall deliver to the purchaser, his assigns or personal representatives, at the sale such deed upon compliance by such purchaser with the terms of such sale, and the payment of any balance of the sale price to be paid. In the event of the failure of such purchaser to pay any part of the purchase price remaining to be paid within 10 days after the confirmation of such sale, the amount so deposited shall be forfeited and paid to the parties who would be entitled to the proceeds of such sale as ordered by the court, and a resale shall be had of said premises, and in such event such deed so executed to the defaulting purchaser shall be destroyed by said clerk, and shall be of no effect. In the event that such sale is not confirmed by the court, the clerk shall forthwith refund to the purchaser at such sale the amount so paid or deposited by him, and shall likewise destroy such sheriff's deed so executed, and the same shall be of no effect, and a resale of the premises shall be had upon due notice thereof."

the purchaser has the election, not a requirement, to pay the purchase price within ten days after confirmation, and if the purchaser fails to do so, all deeds are destroyed and a resale shall be had of the premises.

The court found the judgment of foreclosure to be in error because there existed discrepancies between the findings of fact entered by the court and the judgment. The court ordered the prior judgment set aside and a new judgment entered in conformity with the findings of fact. The court also set aside the February 8, 1977, sheriff's sale and ordered a new sale, citing *Prudential Insurance Co. v. Cuttone,* 227 Wis. 48, 277 N.W. 630 (1938), as authority for the disposition.

Family engaged another lawyer to work on the case and filed a motion on April 12, 1977, requesting that the court order a new foreclosure judgment and sale, along with approval of the receiver's accounts, allowance of his expenses and attorney fees, and for disbursement of the evidentiary balance of the receiver's account.

On May 26, 1977, Lakeshore and Barkwood filed a motion requesting that the court determine the sum of $69,-991.15, plus accrued interest, in the hands of the receiver to be a surplus fund to which Family has no claim, and thus the sum should be given to the clerk of courts to be disbursed according to sec. 846.162, Stats., to all persons who have filed claims; or in the alternative, require the sheriff, upon resale, reject any and all bids submitted which are not greater than or equal to the amount of the judgment. The motions were denied.

In two decisions dated June 3, 1977, the court ruled that the findings made by the court on December 21, 1976, were erroneous and incomplete and thus in error. On June 3 and 7 the court made separate findings concerning the amounts recoverable by Family as part of its mortgages on the Greenbrier project. A new judgment of foreclosure was entered and docketed June 30, 1977, and notice of judgment was given to the appellants. The amount set out in the judgment as due and owing to

Family was "the sum of $2,707,727.84 for principal, interest, taxes, expenses, attorneys' fees, costs, and disbursements of this action." The court orderd a new sheriff's sale be held. The sale was held August 15, 1977, and Family was the successful bidder.

On July 7, 1977, the appellants filed a notice of appeal from the order setting aside judgment, sale and confirmation, the supplemental decision and order based on the hearing held on June 3, 1977, and the whole of the judgment and foreclosure.

On September 7, 1977, Family filed a notice of application for confirmation of the August 15 sheriff's sale. Two days later Lakeshore and Barkwood filed a motion requesting an order protecting their interest in the Greenbrier property from being impaired in the event they were successful in the appeal filed with this court.

Upon due notice a hearing on confirmation of sale and the appellants' motions was held, and the court entered an order which approved and confirmed the sale by the sheriff held August 15, 1977; approved the receiver's account, directing him to pay to Family $121,792,111, the net balance in the receiver's account, and discharged the receiver; and denied Lakeshore and Barkwood's motion to preserve the res pending the appeal "because this court has no jurisdiction to grant the same." Accordingly, the mortgage debt was satisfied and sheriff's deeds delivered to Family and Greenbrier Apartments, a limited partnership, on whose behalf Family purchased the condominium property.

The appellants challenge the trial court's order setting aside the first judgment of foreclosure, the sheriff's sale, and the order confirming the sale entered March 31, 1977. The trial court set aside the first judgment after concluding that "the judgment obviously is in error" and that "there appears to be a discrepancy existing between the findings of fact I have seen or as they have been

stated in the December 21st hearing, and the judgment." The discrepancy in the judgment involved the taxation of costs without sending notice to the adverse party and inclusion in the judgment of amounts for costs, fees, etc., which were incorrect and unauthorized. Neither party disputes the fact that the judgment must be corrected. Neither party questions the trial court's authority to vacate the original foreclosure judgment. The dispute concerns the sale and confirmation of sale and the trial court's authority to vacate or set them aside.

Lakeshore and Barkwood sought to have the court amend the judgment, not vacate it, by eliminating the amounts allowed for costs and fees. The court denied the appellants' motion. Family at no time filed a motion for relief from the judgment but sought relief from the order confirming the sale. The trial court acted within the bounds of its discretion to relieve a party from a mistake and set aside the judgment. In *Barrock v. Barrock*, 257 Wis. 565, 44 N.W.2d 527 (1950), an action for divorce, the trial court originally awarded certain property to the defendant, including all household property except the plaintiff's personal effects. The plaintiff then moved for modification of the judgment. The trial court amended the judgment in a manner adverse to the plaintiff, increasing the property award to the defendant. The plaintiff appealed, claiming that the trial court was without jurisdiction to amend the judgment. This court disagreed. "By seeking modification of the judgment plaintiff invoked the continuing jurisdiction of the court. The court, having jurisdiction to amend the decision, had the power to correct it to the disadvantage of the plaintiff as well as to his advantage." *Id.* at 569. Because a motion for relief from the judgment was before the trial court, the trial court possessed authority to vacate the judgment in its entirety.

■
Because a judgment of foreclosure authorizes the sheriff's sale, authority for the sale is removed if the judgment is vacated or set aside. The trial court, recognizing that the order for sale was dependent upon the judgment, stated: "The judgment being set aside, I think it is also important—imperative that the Court set aside the sale, and order a new sale."

■
The discretion of a trial court to set aside a sheriff's sale is well established in Wisconsin law. In *Strong v. Catton,* 1 Wis. 408, 424 (1853), this court held:

> "It must be conceded, that, until the report of the sale is confirmed, the whole matter is subject to the control of the court, and that a purchaser upon a sale upon foreclosure of a mortgage in chancery buys subject to the action of the court in confirming or setting aside the sale, and we see nothing in the statute to which we have been referred that curtails this power of the court. Indeed, the very words of the decree under which this sale was made, and which is the usual form of a decree of foreclosure, reserves this control to the court. *And not only before, but after confirmation, from the nature and constitution of the court, it has a complete control over the parties to the cause and the subject matter, and may, in a case requiring its interposition, set aside a sale and divest any acquired rights of a purchaser; in doing which, however, it will take care that no injustice shall be done to any of the parties.*" (Emphasis supplied.)

A sale can be set aside whenever it would be inequitable or against good conscience to permit the sale to stand. *Id.* at 425 [493]. *See also: Kemp v. Hein,* 48 Wis. 32, 35–36, 3 N.W. 831 (1879); *Hubbard v. Taylor,* 49 Wis. 68, 70, 4 N.W. 1066 (1880); *Veit v. Meyer,* 105 Wis. 530, 532, 81 N.W. 653 (1900).

The discretionary power to set aside a sheriff's sale is reaffirmed by more recent authority. In *Kremer v.*

*Thwaits,* 105 Wis. 534, 536, 81 N.W. 654 (1900), this court described the "very broad discretion" of the trial court to set aside a sale and warned that "unless that discretion is clearly abused . . . , it will not be interfered with on appeal." *Accord: Adams v. Haskell,* 10 Wis. 107 (*123), 109 (*125) (1859); *Koop v. Burris,* 95 Wis. 301, 304, 70 N.W. 473 (1897); *Veit v. Meyer, supra* at 532; *John Paul Lumber Co. v. Neumeister,* 106 Wis. 243, 246, 82 N.W. 144 (1900); *Prudential Insurance Co. v. Cuttone,* 227 Wis. at 51; *Gumz v. Chickering,* 19 Wis.2d 625, 634, 121 N.W.2d 279 (1963). *See also: Homestead Land Co. v. Joseph Schlitz Brewing Co.,* 94 Wis. 600, 601–02, 69 N.W. 346 (1896); *Cameron v. Heinze,* 231 Wis. 479, 487, 286 N.W. 47 (1939).

The statutory authority for vacating the order confirming the sale is sec. 806.07, Stats. Family argues that the trial court could grant relief from the order confirming the sale under either subsection (1)(a) or (1)(h). Section 806.07(1)(a) establishes that a trial court may relieve a party from an order on grounds of "[m]istake, inadvertence, surprise, or excusable neglect." Family contends that the order confirming the sale is the product of mistaken sale and judgment of foreclosure because the amounts set out in the judgment for costs, fees, disbursements, and taxes were incorrect, making it impossible for Family to analyze and enter a proper bid at the sale. Sec. 806.07(1)(h) authorizes the trial court to relieve a party from an order for "[a]ny other reasons justifying relief from the operation of the judgment."

Authority to grant relief pursuant to sec. 806.07(1) (a) and (1)(h), Stats., rests in the discretion of the trial court. *Marotz v. Marotz,* 80 Wis.2d 477, 259 N.W.2d 524 (1977); *In Matter of Estate of Smith,* 82 Wis.2d 667, 264 N.W.2d 239 (1978). The trial court exercised its discretion and granted the relief because the incorrect

figures set out in the judgment caused Family to incorrectly analyze its bid, thus rendering Family unable to make a knowledgeable bid at the sale. At the hearing the trial court defined its reasoning and exercised its discretion.

On appeal "this court will not reverse the trial court's decision unless there has been a clear abuse of this discretion." *Marotz v. Marotz, supra* at 483; *Amidzich v. Charter Oak Fire Insurance Co.,* 44 Wis.2d 45, 54–55, 170 N.W.2d 813 (1969).

There was evidence to support the trial court's decision to vacate the original sale. Lakeshore and Barkwoods counsel did not point out the discrepancies in the judgment until after the sale had been confirmed even though he apparently had knowledge of the errors prior to the confirmation of the sale:

"*By Mr. Steuer:*
"Your Honor, I have no objection to a confirmation of the sale in those amounts—the sales in those amounts. I deem that sale to be in the best interests of all creditors and all parties having an interest in this real estate, and I have no objection thereto. However, I have further objections I would like to state on the record after the confirmation."

Immediately following the court's confirmation of the sale, counsel for Lakeshore and Barkwood raised the issue of the errors in the judgment. It was the duty of counsel to indicate to the court that there was an error in the judgment before the confirmation order was entered.

At the hearing on confirmation of the second sale, there was testimony that the value of the property was not equal to or greater than the amount of the mortgage debt. Lakeshore and Barkwood, therefore, would

have been unjustly enriched if the original sale were allowed to stand because as first mortgage holder Family's bid at the sale was more than fair value of the property. We recognize that, because the second sale is subject to confirmation by the court if the price bid at the sale is inadequate, Lakeshore and Barkwood could object to the confirmation of the sale. Sec. 846.165(2), Stats.,[5] requiring that the premises be sold for their *fair value,* protects the interests of subordinate lien claimants.

Lakeshore and Barkwood cite *Wilson v. Craite,* 60 Wis.2d 350, 210 N.W.2d 700 (1973), as authority for the proposition that, where a party at a sale overbids and the overbid is the result of the party's own unilateral mistake, the party is bound by his bid. They argue that Family's overbid in this case is the result of its unilateral mistake, and therefore the trial court should not have granted Family relief from the first sale.

*Wilson v. Craite, supra,* involved a request for relief from a bid at an execution sale, and not at a sheriff's sale, in a mortgage foreclosure action. An execution sale is completed when made without any action or approval by the court. A sheriff's sale on foreclosure requires court approval; until the sale is confirmed, the foreclosure action is not completed. *Gerhardt v. Ellis,* 134 Wis. 191, 195, 114 N.W. 495 (1908). Accordingly, the court in a foreclosure proceeding retains its inherent equitable authority to review and supervise the proceed-

[5] Section 846.165(2), Stats., provides:

"(2) In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs."

ing. Thus the rule expressed in *Wilson v. Craite, supra,* cannot be applied to benefit Lakeshore and Barkwood.

On the issue of whether appellants should have been served with a notice of foreclosure sale, sec. 846.16, Stats.,[6] provides that notice of foreclosure sale shall be given in the manner provided for sale of real estate upon execution. Section 815.31, Stats., requires notice of sale of realty on execution to be published and posted.[7] Notice of sale was posted and published in accordance with this section. Since there is no requirement that the notice be personally served on any of the parties, the notice of sale given in this case was sufficient.

---

[6] Section 846.16(1), Stats., provides in part:

"846.16 **Notice and report of sale.** (1) The sheriff or referee who makes sale of mortgaged premises, under a judgment therefor, shall give notice of the time and place of sale in the manner provided by law for the sale of real estate upon execution or in such other manner as the court shall in the judgment direct."

[7] Sections 815.31(1) through (4), Stats., provide:

"815.31 **Notice of sale of realty; manner; adjournment.** (1) The time and place of holding any sale of real estate on execution shall be publicly advertised by posting a written notice describing the real estate to be sold with reasonable certainty in 3 public places in the town or municipality where such real estate is to be sold at least 3 weeks prior to the date of sale; and also in 3 public places of the town or municipality in which the real estate is situated, if it is not in the town or municipality where the sale is to be held.

"(2) A copy of the notice of sale shall be printed each week for 6 successive weeks in a newspaper of the county prior to the date of sale.

"(3) If there be no newspaper published in the county and the premises are not occupied by any person against whom the execution is issued or by some person holding as tenant or purchaser under him such notice shall be so published in a paper printed at Madison.

"(4) The court, or a judge, upon application of the party issuing the execution shall direct, by order, the newspaper in which the publication of the notice is to be made."

Because we conclude that the trial court's decision to vacate the original sale was a proper exercise of discretion and that there was no defect in noticing the sheriff's sale, we affirm that part of the order appealed from in the companion case, *No. 77–530*, confirming the sale and providing for applying the funds in the hands of the receiver to the mortgage debt. The appeal from the remaining part of the order raises the issue of whether the trial court had authority to grant a stay of the foreclosure proceedings pending the appeal in *No. 77–046*. Because a determination of this issue "cannot have any practical effect upon an existing controversy," the issue is moot. *Schwarzbauer v. Menasha*, 33 Wis.2d 61, 63, 146 N.W.2d 402 (1966). Accordingly, that part of the appeal in *No. 77–530* is dismissed. *Id.* at 63–64.

*By the Court.—Case No. 77–046,* judgment and orders affirmed. *Case No. 77–530,* order affirmed in part, appeal dismissed in part.

COFFEY, J., took no part.