FIRST WISCONSIN NATIONAL BANK OF OSHKOSH, a U. S. corporation, Respondent, v. KSW INVESTMENTS, INC., a Wisconsin corporation, Appellant: KRAMER and others, Defendants.

*No. 628 (1974). Submitted on briefs December 2, 1975.—*
*Decided February 10, 1976.*
(Also reported in 238 N. W. 2d 123.)

For the appellant there was a brief by *Berk, Pressentin & Hoida* of Green Bay.

For the respondent there was a brief by *Timothy M. Dempsey* and *Dempsey, Magnusen, Williamson & Lampe* of Oshkosh.

DAY, J.   This is an appeal from an order confirming the price bid by the mortgagee, First Wisconsin National Bank of Oshkosh, at a foreclosure sale, and which also ordered a deficiency judgment against the appellant in the amount of $124,458.06. The issue raised is whether the price bid by the mortgagee was so inadequate as to result in an injustice to the owners of the property, if approved. *Home Bank v. Becker* (1970), 48 Wis. 2d 1, 13, 179 N. W. 2d 855. After reviewing the record, we reverse the order, not simply because the bid was very low, but more accurately because the trial court erred in finding the fair value of the property based on testimony establishing the fair market value of the building as an empty, vacant shell.

KSW Investments, Inc., purchased the property which is the subject of this appeal in 1969 for the sum of

$63,000. At the time of the purchase, the building, which was located in downtown Oshkosh directly across the street from a new bank building and one or two blocks from a new shopping center, was being used as a printing facility. On or about May 16, 1969, appellant KSW Investments, Inc. (hereafter KSW), executed and delivered to the respondent, First Wisconsin National Bank of Oshkosh (hereafter bank), its promissory note and mortgage for purchase money and improvement funds in the sum of $100,000. At that same time, Gerald Kramer and Ben C. Stone, officers of KSW, delivered to the bank their guaranties each in the sum of $130,000.

Approximately one year later, on May 5, 1970, KSW executed and delivered to the bank another promissory note and mortgage upon the premises in the sum of $23,000. At this time, Kramer and Stone reissued their guaranties in the sum of $153,000.

The property was purchased for investment purposes and was completely remodeled by KSW as a "Red Ram" restaurant, involving the expenditure of $160,000 to $170,000 for improvements, not including personal property, or the necessary equipment for operation as a restaurant. The property was leased to the management of the Red Ram restaurant.

Thereafter, the property underwent a number of management changes, and from 1970 to 1974, four different restaurant, bar or restaurant-bar businesses occupied the building. At the time of the foreclosure, the building was occupied by a bar known as the "Paddock Club."

KSW made no payments of principal or interest on the $100,000 note after February 16, 1971, or on the $23,000 note after January 16, 1971. In addition, real estate taxes and special assessments were left unpaid from 1969 throughout the foreclosure proceedings.

The foreclosure action was commenced and KSW did not answer. Judgment of foreclosure was entered and

the property was ordered sold at a sheriff's sale. The bank was the only party present at the sale and made the only bid in the amount of $23,000, subject to the delinquent real estate taxes, prorated real estate taxes, and interest due on the judgment—an additional amount of approximately $23,000.

Thereafter the bank moved for an order confirming the sale and for a deficiency judgment. A hearing was held at which the bank presented testimony of its appraiser, Gordon Kargus, who testified he appraised the property at its fair market value as a vacant building— a shell. According to Kargus, the property had a fair market value of $46,800.

KSW also presented the testimony of an appraiser who testified that in his opinion, the property had a market value of $155,000, including personal property, and a fair market value of $131,000 without the personal property.

Additionally, by stipulation documents were introduced in evidence indicating that the property had been assessed by the city of Oshkosh in 1969, the year of its purchase, at $26,900; for 1970 through 1972 at $62,600; and for 1973, the year of the foreclosure sale, at $45,500. Testimony established that this type of property was assessed by the city assessor at 40 percent of its market value, which translates into market values of $67,250 for 1969; $156,500 for 1970 through 1972; and $113,750 for 1973. It was not stipulated that those were in fact correct market values for this property.

After hearing the testimony, the trial court rendered its decision, stating:

"The question before the court for determination is as to the fair value at a sheriff's sale, recognizing that a sheriff's sale is a distress sale and that the full fair market value is not necessarily received, and under Wisconsin decisions, it is not required.
". . .

"Recognizing that this is a distress sale, and recognizing further that the defendant KSW Investments and Mr. Stone had notice of this sale and chose not to attend and not to bid, all in all, the court finds that the bid price bid by the First Wisconsin National Bank of Oshkosh of $23,000, assuming taxes which then amounted to $23,500 or more, and they would be more at this time, was a fair value for the premises, and the court will therefore enter an order at this time and does order that the report of the sheriff be confirmed . . ."

It is well-settled that the decision to confirm a judicial sale following a foreclosure is vested in the broad discretion of the trial court, but such confirmation may be refused if there is an apparent inadequacy in the price which was caused by mistake, misapprehension or inadvertence on the part of the interested parties or possible bidders. *See: Gumz v. Chickering* (1963), 19 Wis. 2d 625, 121 N. W. 2d 279. Additionally, such confirmation may be denied in the discretion of the trial court if the bid price was so inadequate so as to shock the conscience of the court. *Gumz v. Chickering, Id.; Citizens Bank of Sheboygan v. Rose* (1973), 59 Wis. 2d 385, 388, 208 N. W. 2d 110, and cases cited therein.

Sec. 816.165 (2), Stats. (formerly sec. 278.105), provides:

"Application for confirmation of sale and for deficiency judgment:
" . . .
" (2) In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs."

There is no claim in the instant case that the alleged inadequate bid price was the result of mistake, misapprehension or inadvertence; rather, the argument is that

the price of $23,000 bid by the bank was so inadequate as to shock the conscience of the court.

By finding the $23,000 bid made by the bank to be the "fair value" of the property, the trial court implicitly found that the bid was not so inadequate as to shock its conscience. Such determination if made in the exercise of the trial court's discretion ordinarily will be affirmed by this court. However, we have held that the trial court, when acting on matters resting within its discretion, must exercise a legal discretion. If that discretion is abused or if the court proceeds upon a mistaken view of the law, this court will reverse. *Churchill v. Welsh* (1879), 47 Wis. 39, 54, 55, 1 N. W. 398. *See also: Beberfall v. Beberfall* (1969), 44 Wis. 2d 450, 171 N. W. 2d 390.

This court has stated:

"This means that for this court to affirm what is contended to be a discretionary act there must be evidence that discretion was in fact exercised. If a judge bases the exercise of his discretion upon an error of law, his conduct is beyond the limits of discretion." *State v. Hutnik* (1968), 39 Wis. 2d 754, 763, 159 N. W. 2d 733.

Also in *State ex rel. Schulter v. Roraff* (1968), 39 Wis. 2d 342, 349, 350, 159 N. W. 2d 25, cert. den. 393 U. S. 1066, 89 Sup. Ct. 716, 21 L. Ed. 2d 709, this court stated:

". . . a discretionary order made by a trial court as a result of an erroneous view of the law may be reversed without establishing an abuse of discretion on the part of the trial judge . . ." (Citations omitted.)

We conclude the order confirming the sale must be reversed because the trial court erred as a matter of law in the criteria it used to establish the fair value of the property.

In *Citizens Bank of Sheboygan v. Rose, supra,* this court noted "shocking the conscience of the court is

another way of saying that the price is inadequate as a matter of law." *Id.* at p. 389. In the instant case, both sides presented testimony from their respective appraisers relating to the value of the property. The trial court accepted and adopted the appraisal made by Kargus for the bank. Kargus appraised the property at $46,800. This appraisal was based on the property as a vacant, empty shell and from Kargus' own testimony, the figure given represented his opinion of the fair market value of the building as a vacant shell even though both he and the bank's vice-president recognized that the highest and best use of the property was as a bar-restaurant facility.[1]

This fair market value of the building as a shell was followed by the trial court in determining the statutorily mandated "fair value" of the property. This court has previously stated with respect to the "fair value" of the foreclosed property as that term is used in the statutes that:

> " 'Fair value' obviously does not mean 'market value' as that term is generally understood, or that value which the property may probably have in the future under more favorable economic conditions or that value which it may have if the property be remodeled and put to other or more extensive uses which possibly may prove more profitable."

*Northwestern Loan & Trust Company v. Bidinger* (1937), 226 Wis. 239, 245, 246, 276 N. W. 645.

The statute requires that the trial court be satisfied that the fair value of the premises sold has been credited

---

[1] The appraisal by Kargus was made in May of 1973. In April of 1970, the bank had the property appraised at $199,000 by Robin Jones. This gross disparity in appraisals remains unexplained in the record except perhaps by the fact that the earlier appraisal was made when the Red Ram was occupying the building. Thus presumably the earlier appraisal was made on the basis of the property being used as a bar-restaurant, while the latter appraisal was made, although the building was occupied at the time by a bar, as if the building were a vacant shell.

on the mortgage debt, interest and costs prior to confirming the sale. In *Northwestern Loan & Trust Company v. Bidinger, supra,* at p. 247, this court recognized that the statute above quoted first enacted by Chapter 449, Laws of 1935, was a direct outgrowth from and almost an identical restatement of this court's opinion in *Suring State Bank v. Giese* (1933), 210 Wis. 489, 246 N. W. 556. In the *Suring State Bank Case,* the foreclosed property had been bid in at a sheriff's sale for approximately one-third of its value and the mortgagee who was the purchaser at the sale was demanding a deficiency judgment for over $1,600, so that, if the sale had been confirmed, the mortgagee would have had the property and still had a claim for more than four-fifths of the original loan. In *Suring State Bank,* this court recognizing the then existing economic depression and emergency, and acknowledging the inadequacy of a judicial sale to establish a fair value for the security, because of such emergency resulting in the absence of competitive bidders, stated that the trial court when presented with a motion to confirm a foreclosure sale, could do any one of the following things:

"(1) The court may decline to confirm the sale where the bid is substantially inadequate.
". . .
"(2) The court, in ordering a sale or a resale, may, in its discretion, take notice of the present emergency and after a proper hearing, fix a minimum upset price at which the premises must be bid in if the sale is to be confirmed . . .
"(3) The court may, upon application for the confirmation of a sale, if it has not theretofore fixed an upset price, conduct a hearing, establish the value of the property, and, as a condition to confirmation require that the fair value of the property be credited upon the foreclosure judgment." *Id.* at pages 492, 493.

Sec. 278.105, Stats., merely codified the decision in the *Suring Bank Case* with respect to the establishment of the

fair value of the property and its application toward the mortgage debt. The term "fair value" and "real value" were used interchangeably in the *Suring Bank Case* and following cases.

In *Kremer v. Rule* (1934), 216 Wis. 331, 257 N. W. 166, this court spoke to the question of the definition of market value and real value and stated:

> " 'Market value,' as ordinarily defined, can have little if any, application to a mortgage foreclosure sale where obviously the defendant mortgagor is forced to sell and where the plaintiff mortgagee, in the absence of other bidders, is obliged to bid if the foreclosure sale is to be consummated. So when a court is determining 'real value of the premises' for the purpose of giving to the mortgagee the option to credit the amount thereof on the foreclosure judgment as a condition precedent to confirmation of a mortgage foreclosure sale which has already taken place upon a bid deemed by the court to be substantially inadequate, it should not consider 'market value' as that expression is ordinarily used and understood, much less the value that the premises may have had at some remote time or may have in the future if the price is obtainable for farm products prevalent during such past remote period shall again prevail.
>
> " . . .
>
> " 'Real value of the premises' as used in the *Suring Case,* should approximate that price which a person willing and able to buy the property would reasonably pay for it, not for purposes of speculation, *but for that use to which it has been or reasonably may be put." Id.* at pages 338, 339. (Emphasis supplied.)

The language of the statute that "no sale shall be confirmed and judgment for deficiency rendered until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and cost" was subsequently interpreted by this court to mean nothing more than "such reasonable value as does not shock the conscience of the court." *Northwestern Loan & Trust Company v. Bidinger, supra,* at p. 247.

In the instant case, the testimony upon which the court based this determination did not establish the fair value of the premises since Kargus, the appraiser, clearly applied the fair market value test to the building as if it were a vacant shell. This is not consistent with the definition of the fair value of the premises stated in *Kremer v. Rule, supra.* In determining the fair value of the premises, as that term is used in the statutes, the trial court should have considered the price which a person willing and able to buy the property would reasonably pay for it, not for purposes of speculation, but for that use to which it has been or reasonably may be put.

Because the trial court relied on the appraisal of the fair market value of a vacant building in determining the bid represented the fair value of the property, the trial court erred as a matter of law.

We note that certain language of this court in *Citizens Bank of Sheboygan v. Rose, supra,* appears to be inconsistent with the dictates of sec. 816.165 (2), Stats., with respect to when a fair value must be found. In that case, this court said at pages 388, 389:

"The upset price or the fair value finding is utilized in the discretion of the court only after the court finds the price bid to be so inadequate as to shock its conscience. See *Kremer v. Rule* (1934), 216 Wis. 331, 257 N. W. 166; *Brinckley v. Sager* (1939), 232 Wis. 88, 286 N. W. 570; *Welfare Building & Loan Association v. Gearhard* (1940), 235 Wis. 229, 293 N. W. 813."

The statute itself does not speak in terms of the trial court being required to be shocked by an inadequate bid price before a fair value need be determined. Clearly, the parties and the trial court in this case did not interpret the statute that way since the trial court set the fair value of the premises at the price bid by the bank after the hearing on the motion to confirm. The language of the statute mandates that no sale shall be confirmed

until the court is satisfied that the fair value of the premises has been credited toward the mortgage debt, interest and costs. For ease of administration and consistent with logical interpretation of the statute, the trial court should, when confronted with a motion to confirm a sheriff's sale where the mortgaged premises have been sold for less than the amount due on the mortgage, make a specific finding of the fair value of the premises and make a specific finding that such value has been credited toward the mortgage debt. These findings should be made even though the trial court's conscience is not shocked by the bid. The language to the contrary in *Citizens Bank of Sheboygan v. Rose, supra,* is withdrawn.

This interpretation more accurately reflects the language and meaning of this statute which has caused difficulty in interpretation for some time. For example, one commentator has stated that ever since the *Suring Bank Case, supra,* this court ". . . has been explaining just what was meant and correcting the methods of applying the statute by the lower court." Worthing, *"Real Estate Foreclosures,"* 34 Wis. Bar Bulletin 63, at p. 72 (Dec. 1961). *See also:* 1939 Wis. L. Rev. 89, *The Work of the Wisconsin Supreme Court,* pp. 90, 91.

In the instant case, we reverse the order confirming the sale since the trial court erroneously relied on the appraisal of the fair market value of the building as a vacant shell in determining the fair value of the property. We remand the case to the trial court with directions to hold a new hearing on the motion to confirm the sale. At this new hearing, each side should be given an opportunity to present testimony to establish the fair value of the property as that term has been defined herein.

The appellant also objected to various observations made by the trial judge during the hearing as to his personal knowledge of the area. In view of the fact

that this case is to be reheard, the matter of judicial notice will be subject to the new code of evidence. Sec. 902.01 covers judicial notice of adjudicative facts and provides that the parties may be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.

*By the Court.*—The order is reversed and the cause remanded for further proceedings not inconsistent with this opinion.