In re David Michael
**SCHEMBERGER, Debtor.**

**Daniel W. GIWOSKY, Plaintiff,**

v.

**David Michael
SCHEMBERGER, Defendant.**

**Bankruptcy No. 8200135.
Adv. No. 83–0604.**

United States Bankruptcy Court,
E.D. Wisconsin.

May 24, 1985.

Daniel W. Giwosky, pro se.
David Michael Schemberger, pro se.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

The question presented in this case is whether the debt of the debtor, David Michael Schemberger ("Defendant") to Daniel W. Giwosky ("Plaintiff") should be declared nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code which reads as follows:

"A discharge under section 727 ... of this Title does not discharge an individual debtor from any debt ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity"

By the time the trial was held before this Court, the attorneys for both parties had withdrawn of record. Only the plaintiff appeared at the trial *pro se* at which time he presented testimony and submitted exhibits into evidence. The defendant was duly notified of the trial but did not appear, and there were no other witnesses. Among the exhibits received into evidence was an extensive transcript of prior state court proceedings between the same parties which litigation involved, among other things, the same issues as are present in this nondischargeability proceeding. This Court declared, at the outset of the trial, that it would take judicial notice of the court records, files and proceedings in the state trial court as well as in the state appeal proceedings [1] pursuant to Rule 201 of the Federal Rules of Evidence.

## FACTUAL BACKGROUND

On or about July 1, 1979, the defendant, a physician who was not actively practicing medicine at that time but whose principal occupation was in the real estate investment business, entered into two separate land contracts for the purchases of adjacent parcels of real estate located in Milwaukee, Wisconsin. One of the parcels was located at 1234–1238 East Brady Street and contained a combination eight-unit apartment building and store. It was purchased directly from the plaintiff who also was a real estate investor. The Brady Street land contract was fully payable in one year at a purchase price of $150,000. At the same time, a second land contract was entered into by the defendant for the purchase of adjacent real estate located at 1713–1715 North Arlington Place. It consisted of a four-family apartment building located in the front of the parcel and a duplex located in the rear of the parcel

---

1. The plaintiff appealed a portion of the judgment arising out of the state trial court to the Wisconsin Court of Appeals where the judgment was affirmed. Thereafter, the plaintiff further appealed to the Wisconsin Supreme Court by means of a petition for review which was denied.

which parcel was purchased for a total price of $75,000. There was no allocation of this price as between the two buildings located on this parcel. The Arlington Place land contract was also fully payable in one year and was purchased from Judith Giwosky as Trustee for the Children's Trust (Daniel Giwosky Children).[2] The Brady Street and Arlington Place parcels collectively form an "L" shaped parcel of real estate.

In the early part of October, 1979, the defendant approached the plaintiff for the purpose of obtaining authority to raze the duplex located on the Arlington Place parcel. Why this request was made is not clear from the transcript of the state court proceedings. According to the plaintiff, it was a "business judgment" decision made by the defendant who believed that tearing down the building and using the site for a parking lot would produce greater benefits for him.[3]

The actual razing of the building took place either a few days before or a few days after the parties met to discuss obtaining the plaintiff's consent to the razing, but the precise time when this occurred was never clearly established. It is undisputed, however, that the plaintiff never gave permission to the defendant and that the defendant, nevertheless, proceeded to raze the building.

Three separate lawsuits were thereafter filed in Milwaukee County Circuit Court. Two of these suits were commenced by the plaintiff against the defendant seeking specific performance of the two land contracts. The third lawsuit was initiated by the defendant against the plaintiff for recission of the two land contracts. All three lawsuits were consolidated and resulted in a six day trial held before the Honorable Laurence C. Gram, Jr., Milwaukee County

Circuit Judge. Following extensive testimony, briefs and oral arguments by counsel for each party, Judge Gram issued a written decision on February 5, 1981. In his decision, he specifically made the following finding:

"The evidence further shows that the duplex located on the Arlington Avenue property was demolished without the consent of either Judith or Daniel Giwosky. The Court is aware of the testimony indicating that prior to the execution of the land contracts there was discussion concerning the possible demolition of the duplex. The Court notes, however, that the land contract was a very short term land contract, that is one to be completed within a year. The Court cannot infer from this conversation that there was any agreement or understanding that the duplex would be demolished prior to the completion of the obligations under the terms of the land contract."

Judge Gram granted specific performance to the plaintiff on each of the land contracts and gave the defendant 120 days from February 20, 1981 to pay the amounts which were found to be due on each land contract. These amounts (including attorneys fees and disbursements) were $73,-276.95 for the Arlington Place property and $124,890.73 for the Brady Street property. Each judgment further provided that in the event the defendant failed to pay the amount ordered in each judgment within the specified 120 day time period, the plaintiff could then enforce such judgment by a sheriff's sale, and retain a right of deficiency against the defendant. With respect to the third suit filed by the defendant, Judge Gram did not grant recission as was requested. He did, however, find material

2. Judith Giwosky is the wife of the plaintiff. On January 8, 1982, the judgment which she had obtained as Trustee for the Children's Trust against the defendant in the prior state court proceeding in connection with this particular land contract was assigned to the plaintiff.

3. There is some indication in the transcript of the state court proceedings that vandalism,

which was occurring on this duplex about the same time the request to raze it was made and which resulted in the plaintiff obtaining an insurance settlement for property damages in the amount of $930.87, was a factor in the decision to tear the building down. This allegation, however, was never established in either the state court or the bankruptcy court.

misrepresentation on the part of the plaintiff as to the annual electrical costs for the Brady Street property and awarded damages to the defendant in the amount of $12,000 ($8,000 of which were compensatory and $4,000 of which were punitive).

The defendant failed to pay the amounts found to be due on each land contract. The properties were sold at separate sheriff sales, resulting in deficiency judgments on the Brady Street parcel of $4,988.71 and on the Arlington Place parcel of $33,475.56. Thereafter, in further proceedings before Judge Gram, the judgment previously granted to the defendant against the plaintiff for misrepresentation (which totalled $15,996.08 at that time because of additional taxable costs and disbursements) was ordered to first be applied to satisfy the deficiency on the Brady Street judgment. The balance of the defendant's judgment was then ordered to be applied on the deficiency judgment for the Arlington Place property. This left a net deficiency judgment remaining on the Arlington Place property of $22,468.19 which has never been paid.

On January 18, 1983, the defendant filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On February 10, 1983, the Chapter 13 case was converted to a Chapter 7 case.

APPLICABILITY OF SECTION 523(a)(6)

■ This Court has previously stated in *In re Grace*, 22 B.R. 653 (Bankr.E.D.Wis. 1982) and *In re Sindic*, 44 B.R. 167 (Bankr. E.D.Wis.1984) that the § 523(a)(6) dischargeability exception contains the words "willful and malicious" in the conjunctive and that both elements must be shown to exist. Just as in both *Grace, supra* and *Sindic, supra,* there is no serious issue in this case as to whether the defendant's actions were "willful". "Willful" means deliberate or intentional. The defendant's actions in tearing down the duplex on Arlington Place were clearly deliberate, as contrasted with inadvertence or negligence. The real area of contention focuses upon whether the defendant's actions were "ma-licious" within the meaning of § 523(a)(6). It is well settled that "malicious" does not require a finding of hatred, spite, or ill-will, *Collier on Bankruptcy*, § 523.16(1) (15th Ed.). While some courts have held that "malicious" requires an actual or conscious intention to do harm (*see, In re Hodges*, 4 B.R. 513 (Bankr.W.D.Va.1980); *In re Nelson*, 10 B.R. 691 (Bankr.N.D.Ill., W.D. 1981)), other courts have not subscribed to this test, but have instead adopted the pre-Code definition set forth in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). In *Tinker v. Colwell, supra,* the Supreme Court declared that "malice", for purposes of the Bankruptcy Act, meant implied or constructive malice resulting from a wrongful act done intentionally and without just cause or excuse. *See, In re Wyant*, 80–1192 (Bankr.N.D.Ind.1981); *In re Donny*, 19 B.R. 354 (Bankr.W.D.Wis. 1982); *In re DeRosa*, 20 B.R. 307 (S.D.N.Y. 1982); *In re McCloud*, 7 B.R. 819 (Bankr.M. D.Tenn.1980); *In re Auvenshine*, 9 B.R. 772 (Bankr.W.D.Mich.1981); *In re Scotella*, 18 B.R. 975 (Bankr.N.D.Ill.E.D.1982). This Court has consistently followed this latter line of cases. *In re Grace, supra, In re Sindic, supra.* It shall continue to do so in the case at bar.

■ Prior to entering into any agreement, there were discussions between the parties on the subject of tearing down the Arlington Place duplex and putting up a parking lot. However, the defendant never received consent to do this at any time. There is nothing in the land contract which specifically authorized the defendant to raze the duplex without first obtaining the plaintiff's permission. To the contrary, there are provisions in the Arlington Place land contract stating that the defendant must "not commit waste nor suffer waste to be committed" and must "not do any act which shall impair the value thereof." The razing of the building by the defendant was not due to any emergency. It was unilateral action taken by the defendant which resulted in damages to property in which the plaintiff had an interest. It was without the plaintiff's knowledge or con-

sent and was unjustified. Judge Gram pointed out in his decision that the land contract itself was very short and was to have been completed within a year. He accordingly refused to infer any agreement or understanding between the parties to demolish the duplex before the end of the land contract. This issue was fully litigated in the state court by very able counsel representing both parties, and Judge Gram's findings and conclusions are accepted by this Court under the doctrine of collateral estoppel which holds that once issues of fact and law between opposing parties have been fully and fairly litigated and substantially adjudicated, these parties are estopped from relitigating the same issues before another court. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 90 L.Ed.2d 767 (1979).

The defendant's actions were, therefore, "willful" and "malicious" within the meaning and context of § 523(a)(6) of the Bankruptcy Code.

## NONDISCHARGEABLE DAMAGES

■ The remaining issue is the amount of damages to be excepted from discharge. The plaintiff urges this Court to declare the sum of $33,475.56 as nondischargeable. This constitutes the entire amount of the deficiency judgment as found by Judge Gram after the sheriff's sale of the Arlington Place property but without applying any credit for the defendant's judgment against the plaintiff. This Court declines to apply this suggested measure of damages. The plaintiff's approach ignores the application of credit for the defendant's judgment as was previously ordered by Judge Gram. More importantly, the only portion of the debt which is nondischargeable is that amount by which the Arlington Place property was damaged and thereby decreased in value due to the defendant's actions in razing the duplex. In *Matter of Chambers*, 23 B.R. 206 (Bankr.W.D.Wis. 1982) and *In re Blatz*, 37 B.R. 401 (Bankr. E.D.Wis.1984), it was held that a creditor is entitled to only bar a discharge of that portion of an obligation obtained by fraudulent means. By analogy, only that portion of the damages caused by the defendant's willful and malicious acts should likewise be declared nondischargeable. Had the duplex not been razed, undoubtedly a loss in value would still have occurred because of the judicial foreclosure. It is well recognized that prices realized at judicial sales are usually depressed. *In re Richardson*, 23 B.R. 434, 446 (Bankr.Utah 1982). The very nature of a foreclosure proceeding, coupled with the equity of redemption under state law, lowers the fair market value of foreclosed property. *See*, Alden, Gross, and Borowitz, *"Real Property Foreclosure as a Fraudulent Conveyance: Proposals for Solving the Durrett Problem,"* 38 Bus. Law 1605, 1615 (1983).

A review of the trial court proceedings is instructive in arriving at an appropriate measure of nondischargeable damages. Expert appraisers testified for each side. Frank Heilbronner, the defendant's expert, testified that the Arlington Place property had a value "between $52,000 and $62,000". He reached this conclusion by means of capitalizing the total annual net income from both buildings on the Arlington Place parcel (calculated at $6,280) and then applying a ten per cent capitalization rate which resulted in a $52,000 value. Alternatively, applying a twelve per cent capitalization rate resulted in a $62,000 value. Mr. Heilbronner further testified that in his opinion there was no reduction in value after the duplex was razed because of the availability of that site for a parking lot. Gurnee Cape, who testified as an expert for the plaintiff, claimed that razing the duplex decreased the value of the Arlington Place parcel by $18,000. Mr. Cape also utilized the income approach, but limited it solely to the annual gross income from the duplex ($3,600) and then applying a multiple of five (based upon gross comparable sales from similar properties located in the immediate area). The plaintiff also was permitted to testify as to value because of his extensive experience in other real estate dealings in the same general area as is involved in this case. He concluded that the value of the Arlington Place property

was reduced by $25,000 due to the razing of the duplex. Additionally, this Court notes that at the hearing in the state court on the confirmation of the sheriff's sale of the Arlington Place property, Judge Gram found that its fair value at that time was $45,000. Finally, the real estate tax assessments for the Arlington Place property were introduced into evidence. The 1979 tax statement (representing the value before the duplex was razed) reflected a value of $36,200 for both buildings and the 1980 tax bill (after the razing of the duplex) reflected a value for the remaining apartment building of $30,630. Because the City assessor assessed the property in 1979 at 83.45 percent and in 1980 at 75 percent of fair market value, this meant that the fair market values based upon these tax statements were $43,380 in 1979 and $40,840 in 1980, or a reduction in value of $2,540.

This Court affords little weight to the plaintiff's testimony on the claimed loss because his testimony is self-serving. It also does not believe that the assessed values set forth in the real estate tax bills are reliable for purposes of establishing correct market values. The finding by Judge Gram of $45,000 as "fair value" at the confirmation hearing of the sheriff's sale, is not the same as "market value". "Fair value" means nothing more than such reasonable value as does not shock the conscience of the court. *First Wisconsin National Bank of Oshkosh v. KSW Investments, Inc.*, 71 Wis.2d 359, 238 N.W.2d 123 (1976). Under these circumstances, Judge Gram's finding of fair value, while pertinent to the proceedings in the state court, has no significance on the issue of nondischargeable damages in this Court.

This, then, leaves for this Court's consideration the testimony of the two expert appraisers. From a review of the transcript, both appraisers appeared to be credible witnesses. This Court, not having had an opportunity to observe their demeanor in the courtroom, has no reason to give greater credence to one over the other. The nondischargeable damages falls somewhere between the two extremes as expressed by Mr. Heilbronner (who concluded there was no loss) and Mr. Cape (who concluded that there was an $18,000 loss).

■ Courts are frequently plagued with the difficult task of choosing between conflicting expert appraisals on the issue of valuation. Quite often this issue arises in the context of relief from the automatic stay or use of cash collateral, although in this instance it arises in connection with a nondischargeability of debt adversary proceeding. The fact that damages cannot be ascertained with mathematical exactitude does not mean that a claimant who has established he is entitled to nondischargeable damages shall be deprived of his right of recovery. One whose wrongful conduct has rendered difficult the ascertainment of precise damages is not entitled to complain that the damages cannot be measured with precision. 22 Am.Jur.2d § 24, *Damages.* In *In re Rogers Development Corp.*, 2 B.R. 679 (Bankr.E.D.Va.1980), the court found itself in a situation somewhat similar to that which confronts this Court. After recognizing that valuation of property is not an exact science and also that the difference in the values testified to by the two expert witnesses was "properly attributable to a difference of professional opinion", the court found the reasonable value to be an amount which was approximately midway between the two appraisals.

Taking into account the foregoing and all of the circumstances of this particular case, the Court finds that an appropriate measure of nondischargeable damages is $10,000.

### CONCLUSION

The plaintiff has established that the defendant's actions in razing the duplex on Arlington Place were willful and malicious within the meaning of § 523(a)(6) of the Bankruptcy Code, resulting in nondischargeable damages of $10,000.00.

This decision shall stand as and for findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.